UNITED STATES v. BORDONARO et al.

(District Court, W. D. New York.   October 15, 1918.)

BRIBERY ☞1(2)—"OFFICER OF UNITED STATES" —MEMBERS OF DRAFT BOARD.
A member of a local draft board is an "officer of the United States" or a person acting on behalf of the United States in an official function, within the meaning of Criminal Code, § 39 (Comp. St. 1916, § 10203), making it an offense to give or offer a bribe to any such officer, or person.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, United States Officer.]

Criminal prosecution by the United States against Charles Bordonaro and John Marino.   On demurrer to indictment.   Overruled.

Stephen T. Lockwood, of Buffalo, N. Y., for the United States.
Henry Donnelly, of Olean, N. Y., for defendants.

HAZEL, District Judge.   [1] The demurrer, jointly interposed by defendants, challenges the validity of the indictment mainly on the ground that one Murrin, chairman of the local exemption board, division 1, of Olean, to whom $500 was given by defendants to reclass-ify John Marino, by removing him from class 1, A to class 5, F, as a resident alien, was not an officer of the United States; the contention being that he was in fact an officer of the state of New York under the Selective Draft Act (Act May 18, 1917, c. 15, 40 Stat. 76) and the rules and regulations promulgated for carrying it out, and hence that there was no infraction of section 39 of the Criminal Code of the United States.   Act March 4, 1909, c. 221, 35 Stat. 1096 (Comp. St. 1916, § 10203).   This contention, however, seems to me to be untenable.

The members of local boards appointed for carrying out the provisions of the Selective Draft Act are appointed by the President, and it is entirely immaterial that the appointments are made upon the recommendations of the Governors of the various states in which the appointees perform their duties.   The act in terms authorizes and empowers the President to designate local boards upon the recommendations of the Governors of the states, and, furthermore, to utilize the services of officers and agents of the several states in the execution of the act.   Indeed, the act substantially provides that any and all persons designated and appointed under the rules and regulations prescribed by the President, regardless of whether they are appointed by the Governor, or any officer of any state, are required to perform their duties as ordered and directed by the President.   Under the act, the President was specifically authorized to establish and create exemption boards, such boards to be appointed by him and to consist of three or more members, the boards to have power to determine questions of exemption under the act.   Such provisions, in my judgment, support the view of the government that a member of a draft board is an officer of the United States, under article 2, § 2, of the Consti-

tution, and, in any event, under the Selective Draft Act is required to perform an official duty for the United States, and is therefore a person acting in an official function within the meaning of section 39 of the Criminal Code.

Another point sustaining this view is that failure to perform any duty required of a member of a local board is a misdemeanor and subjects him to punishment in the District Court of the United States having jurisdiction of the offense. He' was selected, not merely to perform a ministerial duty, or a duty in a particular case, or as an expert or assistant, nor for his special knowledge, as was the case in Auffmordt v. Hedden, 137 U. S. 327, 11 Sup. Ct. 103, 34 L. Ed. 674, cited by counsel for defendants, but, on the contrary, he was to perform a quasi-judicial function requiring conference with his associate members and the exercise of judgment and discretion in the proper discharge of his duties. It is true that the duration of his office was not stated at the time of his appointment, nor the emolument he was to receive, though reference to the latter is made in the rules; nevertheless his duties were such as fall either to an officer of the United States or to "any person acting for or on behalf of the United States in any official function." Section 39, Criminal Code. In either case the indictment sufficiently apprises the defendants of the character of the charge against them.

The precedents cited by counsel for defendants to sustain his point are to my mind clearly inapplicable to the present situation. In no sense are the members of local boards employés or agents of the states or counties. While their duty, true enough, is to assist in raising the state's quota of men for the United States army, and their decisions result from co-operation and concurrence of the members of the board, still Congress, in enacting the Selective Draft Act, did not contemplate that they were to be employés and agents of the state. Of course, as pointed out, the members of the boards act unitedly, and no individual member has the right to determine for the board any question of classification; but it was plainly a commission of the offense in question to give money to any person acting for, or on behalf of, the United States in any official function with an intent to influence his decision or action on any question which might at any time be pending, or which might be brought before him in his official capacity.

It is questioned whether there was a matter pending before the board. Upon this phase we must look to the indictment, which alleges that a matter was pending and about to come before the board, and that defendants offered money to Murrin in his official capacity to induce him to vote on it a certain way. The trial will no doubt indicate whether or not there was a basis for the performance of an official act by Murrin. It is not thought that section 39 of the Criminal Code is limited to a question or matter pending before Murrin individually, as distinguished from a question or matter pending before the local board. It is essentially necessary in this case for the government to show that the defendants committed an act to influence official action on the part of Murrin, or to influence him in the per-

formance of any duty that he was required to perform by authority of his appointment to office. United States v. Ingham (D. C.) 97 Fed. 935. See, also, United States v. Haas (C. C.) 163 Fed. 908. The evidential facts, true enough, may show that there was no intention to influence official action, but as to this no comment is required.

The demurrer is overruled.