**KEMLER v. UNITED STATES.**

No. 3789.

Circuit Court of Appeals, First Circuit.

Dec. 30, 1942.

Rehearing Denied Jan. 27, 1943.

236

See, also, D.C., 44 F.Supp. 649.

J. C. Johnston and Aaron J. Bronstein, both of Boston, Mass., for appellant.

Thomas P. O'Connor, Asst. U. S. Atty., and Edmund J. Brandon, U. S. Atty., both of Boston, Mass., for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This appeal is from a judgment of the district court sentencing the defendant to a fine and imprisonment after he had been found guilty by a jury of violating Section 39 of the Criminal Code, 18 U.S.C.A. § 91.[1]

It appears that the defendant, who was born on May 28, 1910, was duly registered on October 16, 1940, in accordance with the provisions of the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix § 301 et seq., and regulations promulgated thereunder, and that on May 24, 1941, he duly filed his selective service questionnaire. On September 8, 1941, he was classified by his local board as 1–H and on September 15 following he was duly notified thereof. It is conceded that under the regulations then in effect this deferred classification was appropriate for one of the defendant's age.

On January 26, 1942, the defendant received a notice from his local board to report to its examining physician on February 1 following for a physical examination. On the day before this examination was to take place the defendant presented himself at the examining physician's office; told the doctor that he was not a well man due to a heart condition, and offered the doctor $500 "if the doctor would examine him and defer him on the following day", or, in the words of the confession to be considered hereafter, "if he (the doctor) would say that his heart was weak." The doctor refused the offer, apparently with some warmth, and on February 1 when the defendant reported for physical examination according to the notice which he had received he was questioned by local and federal officers, as will appear in more detail hereafter, and then was placed under arrest.

The defendant does not deny, nor can he, that there is sufficient evidence to indicate that he offered the above sum of money to the doctor for the purpose of inducing the latter to certify that he was unfit for military service, but he contends that this action on his part was not in violation of the statute under which he was indicted and tried. We do not agree.

Writing such parts of the statute as are here material in one unbroken sentence it reads: "Whoever shall promise any money to any person acting for or on behalf of the United States in any official function, under or by authority of any department or office of the government thereof, with intent to influence his decision on any matter which may by law be brought before him in his official capacity, shall be fined and imprisoned."

It is admitted that the doctor to whom the money was offered had been regularly appointed as the medical examiner or examining physician of the defendant's local board and that he had duly and regularly qualified as such. From this it seems to us clear that the doctor, as such examining physician, if he was not an "officer of the United States", was at least a person called upon to act "for or on behalf of the United States in an official function under the authority of a department and office of the Government" as alleged in the count of the indictment under which the defendant was found guilty and sentenced. See United States v. Bordonaro, D.C., 253 F. 477. But the defendant contends that because of his

[1] "Bribery of United States officer. Whoever shall promise, offer, or give, or cause or procure to be promised, offered, or given, any money or other thing of value, or shall make or tender any contract, undertaking, obligation, gratuity, or security for the payment of money, or for the delivery or conveyance of anything of value, to any officer of the United States, or to any person acting for or on behalf of the United States in any official function, under or by authority of any department or office of the Government thereof, or to any officer or person acting for or on behalf of either House of Congress, or of any committee of either House, or both Houses thereof, with intent to influence his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, or in his place of trust or profit, or with intent to influence him to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States, or to induce him to do or omit to do any act in violation of his lawful duty, shall be fined not more than three times the amount of money or value of the thing so offered, promised, given, made, or tendered, or caused or procured to be so offered, promised, given, made, or tendered, and imprisoned not more than three years."

deferred classification his local board could not legally order him to report for a physical examination until it had reclassified him as 1–A, which he says it had not done, and notified him thereof, which admittedly was not done, and therefore that if the doctor had examined him he would not in so doing either have been acting in an official function, or have been called upon to give a decision upon a matter which could by law have been brought before him in his official capacity.

■ We are not by any means persuaded that under the Selective Training and Service Act of 1940, and the regulations promulgated thereunder which were in force at the time the offer to bribe was made, the local board could not legally have ordered the defendant to report for a physical examination as it did, but we need not discuss this question because it seems to us beside the point. The question is not whether the defendant would have been legally justified in refusing to present himself for physical examination. He did present himself for that examination according to the notice which he had received. He did what he was told to do, but attempted to evade what he suspected might be the consequences thereof by offering a bribe and this, in our opinion, is sufficient.

[3-5] The clear purpose of the statute is to protect the public from the evil consequences of corruption in the public service. Thus the gravamen of the offense described therein is the giving or offering of a bribe to a person acting on behalf of the United States for the purpose of influencing official conduct. Obviously no one would give or offer a bribe unless he expected to gain some advantage thereby, and since attempting to gain an advantage by this means is the evil which the statute is designed to prevent, it can make no difference if after the act is done the doer discovers that for some reason or another, be it a mistake on his part or a mistake on the part of some officer or agency of the United States, there was actually no occasion for him to have done it. The statute is violated when a bribe is given or an offer to bribe is made regardless of the occasion therefor, provided it is done with the requisite intent and provided the acceptor or the offeree of the bribe is a person of the sort described in the statute.

■ Considering the regulations as a whole, it seems to us clear that it was the examining physician's function to give physical examinations to such registrants as the local board sent to him and to report the results thereof to the board on forms sent by the board to him, but that it was not his function to determine what persons should come up for examination. There is no provision anywhere requiring that the doctor be shown a registrant's questionnaire, nor is there any provision requiring him to interview a registrant for any purpose other than to determine physical or mental condition. And the regulations are clear that the required physical examination included an examination for certain specified heart conditions. Thus we are of the view that if the doctor had examined the defendant he would have been acting in an official function and would have been called upon to render a decision upon a matter which could by law have been brought before him in his official capacity. The fact that before induction into the army the defendant would receive a more thorough physical examination does not affect his guilt under this statute. Sears v. United States, 1 Cir., 264 F. 257.

■ The suggestion that the doctor could not legally have examined the defendant on February 1, 1942, because he was then required to report the results of that examination upon a specified form which at that time had not been printed and distributed comes to nothing because the instructions to draft boards then in effect authorized the interim use of the old form previously used with two additional questions typewritten or stamped thereon.

■ The defendant further contends that he should be discharged for the reason "that a prosecution cannot be had under a general statute if there is a special statute governing the acts charged" and he cites as the applicable special statute sections 7 and 11 of the Selective Training and Service Act of 1940. Section 7 forbids the payment of bounties; the hiring or enlistment or induction of substitutes, or the payment of money in substitution for training and service under the Act, or liability therefor, and section 11 provides a penalty for knowingly making false statements of fitness or unfitness, or liability or nonliability for service, or otherwise evading either registration or service under the Act. Neither of these sections specifically covers the crime of bribery or attempted bribery. Under these circumstances it seems to us clear that the defendant was

indicted and tried under the appropriate statute.

In concluding this part of the opinion it suffices to say that upon careful consideration we are of the view that the defendant's objections to the form of the indictment are without merit.

We come now to the defendant's principal contention which is that the admission in evidence of his confession was clear error which requires that he be given a new trial.

When evidence of an alleged confession of the defendant was offered he objected and requested that the court hear evidence as to the admissibility thereof on voir dire. Thereupon the court dismissed the jury and said to counsel: "I will admit the evidence of an alleged confession unless I find that there was inflicted upon the defendant physical suffering, or unless he was threatened with physical suffering, or unless threats or promises were made to him which were likely to lead him to make a false statement." Counsel for the defendant then told the court that he took the position "that a confession made when a person is under illegal restraint is as a matter of law involuntary" and the court replied: "I will rule as a matter of law that if the only alleged defect in the confession is that the defendant was under unlawful arrest, that would not make the confession inadmissible."

The evidence offered on voir dire shows that at some time during the afternoon of February 1—the exact hour is not disclosed in the record before us—the defendant reported for physical examination at the headquarters of his local board, which was in the local police station, in accordance with the notice which he had received. It does not appear what transpired when he first arrived, but at about 4 o'clock Captain Tappan of the local police, who was also a member of the local board, arrived at the station, confronted the defendant with the doctor's version of the events of the afternoon before, and asked the defendant for an explanation. When it became evident that no satisfactory explanation would be forthcoming—the defendant repeatedly answered that he did not remember—Captain Tappan notified the local office of the Federal Bureau of Investigation and shortly after 6 o'clock two federal agents arrived. These men, upon being informed of the situation, talked with the defendant, but they also were unable to elicit any satisfactory answers from him.

About half-past seven the defendant asked permission to talk on the telephone with his brother-in-law who was a member of the bar. Permission was immediately granted and soon thereafter the brother-in-law arrived. The situation was explained to him and he was permitted to talk with the defendant in private. As a result of this conference the defendant agreed to confess and promptly did so in the presence of Captain Tappan and the federal agents, one of whom wrote it down. The defendant then read the confession over, or had it read to him by his brother-in-law—the evidence is conflicting—and signed it.

There is no evidence that the defendant suffered any physical violence of any kind. There is no evidence that he was subjected to many hours of continuous questioning; that he was deprived of needed food or sleep, or that he was held incommunicado. In fact it appears that he was repeatedly offered food which he refused; that he was allowed to call his brother-in-law as soon as he asked permission to do so, and, since his confession was given soon after 8 p. m. on February 1, he could not have been deprived of needed sleep. There is not even any evidence that he was questioned continuously during the few hours that he was at the police station.

The court below found that no misrepresentations of fact were made to the defendant for the purpose of inducing him to confess, but he found that there was a conflict in the evidence as to whether or not promises of leniency were made which induced the confession. On this point the court said: "I am inclined to believe that there may have been an impression created that it would be better for the defendant to confess than for him not to confess but taking into account all the circumstances, more particularly the fact that throughout the latter part of the evening—or, rather the early part of the evening—the defendant had the advantage of consultation with his brother-in-law who was a member of the bar, and was able freely to discuss matters with his brother-in-law in the absence of any Government officers, I cannot believe that the testimony is sufficient to warrant me to exclude the confession under those rulings of the Supreme Court of the United States or others binding upon me."

The evidence in the record clearly supports the conclusion reached by the court below, and since its conclusion was arrived at after weighing the credibility of witnesses whose testimony was in conflict, that conclusion is not reviewable by us. We find nothing in the record to indicate any abuse of discretion on the part of the court below.

We are not aware of any case which holds that a confession made by a person under illegal restraint is, as a matter of law, made involuntarily. The only case cited to us by the defendant in support of his proposition is Tilley v. Damon, 11 Cush. 247, decided by the Supreme Judicial Court of Massachusetts in 1853. But this case only holds that a promise to marry is not enforceable by civil action when the promise was made by a defendant at a time when he was under illegal arrest on a bastardy charge.[2] We fail to see its pertinence here.

It was argued before us at length that the court below committed fundamental error when it permitted the jury to have before it during its deliberations a copy of the statute under which this indictment was laid. Without objection or exception the statute was read to the jury by the court in its charge. We find no prejudicial error in permitting the jury to have a copy of it.

The defendant's other exceptions have been considered by us, but we find them to be without merit.

The judgment of the District Court is affirmed.

### On Petition for Rehearing.

Apparently we misunderstood the oral argument of counsel for the defendant. On petition for rehearing we are informed that the court below did not give to the jury a copy of the statute under which the indictment was laid, but that what happened was that it allowed the jury to have a copy of a memorandum dated December 15, 1941, addressed by National Headquarters of the Selective Service System to all State Directors (Local Board Release No. 66) on the subject of "Classification and Physical Examination Amendment to Regulations III." This, we are now informed, is the alleged error of which counsel for the defendant complained at length in his oral argument before us.

Since this memorandum was offered and admitted as an exhibit in the case it was not error for the court below to have sent it out to the jury for them to examine during their deliberations. It would have been error to have done otherwise. The question is whether or not it was error to have admitted the memorandum in evidence as an exhibit in the first place. We address ourselves to that question.

Turning to the record it appears that when the exhibit was offered, counsel for the defendant objected, but the district court overruled the objection stating, according to the bill of exceptions, "that the memorandum was admitted only for the purpose of showing what instructions were received by Dr. Musgrave as of December 15, 1941, with respect to his work as an examining physician of Local Board No. 128, Revere". We find no error in the ruling of the court below admitting this document in evidence.

As appears above the statute proscribes the act of promising money to any person acting for or on behalf of the United States in any official function with intent to influence that person's decision upon "any matter which may by law be brought before him in his official capacity." So, to make out its case, the government had to show that the condition of the defendant's heart was a matter which the draft board doctor was called upon by law to consider. This the government accomplished by the exhibit which gives in full the text of the regulations, as they were then, with respect to the duties of the examining physicians of local boards, and among the duties enumerated in the regulations was the duty to examine for certain specified heart conditions. We fail to see how the government could prove this necessary element of its case in any more satisfactory way than by introducing in evidence the written instructions to the doctor. It seems to us that the admission of the exhibit was so clearly correct that further discussion is unnecessary.

---

2 Cf. Pierce v. United States, 160 U.S. 355, 357, 16 S.Ct. 321, 322, 40 L.Ed. 454, in which Mr. Justice Brown speaking for the Supreme Court said: "the mere presence of officers is not an influence. Confessions are not rendered inadmissible by the fact that the parties are in custody, provided that such confessions are not extorted by inducements or threats."

The other matters urged upon us in support of this petition have either been considered already or else are too trivial to warrant comment.

The petition for rehearing is denied.