UNITED STATES of America

v.

George L. BOWLES and Mayo S. Levenson.

Crim. No. 58–38.

United States District Court
D. Maine, S. D.

Oct. 31, 1958.

Peter Mills, U. S. Atty., Portland, Me., for plaintiff.

John J. Flaherty, Richard S. Chapman and Sidney W. Wernick, Portland, Me., for defendants.

GIGNOUX, District Judge.

On August 14, 1958 an indictment was returned in this Court charging George L. Bowles and Mayo S. Levenson with violations of the conspiracy, bribery and conflict of interest statutes of the United States. 18 U.S.C.A. §§ 371, 201, 202, and 281.

The indictment is in five counts. It alleges generally that during the year 1955 the defendant Bowles was District Supervisor of the Bureau of Motor Carriers, Interstate Commerce Commission, at Portland, Maine; that the defendant Levenson was a practicing lawyer and attorney at law in Portland; and that on September 19, 1955 Levenson paid to Bowles, in his capacity as an employee of the United States acting on behalf of the Interstate Commerce Commission, two checks, each in the amount of $4,-000, for services rendered by Bowles in connection with the sale of the controlling interest in Maine Freightways, Inc., an interstate trucking company operating under the jurisdiction of the Interstate Commerce Commission. It is alleged that the services thus rendered by Bowles consisted of attendance at a meeting in Levenson's office on August 6, 1955 and the writing of a letter dated September 20, 1955 for the purpose of assisting Levenson in consummating the sale of the controlling interest in Maine Freightways, on behalf of its then owners, by the use of Bowles' official position, by advising the prospective buyers that since the sale was being made to a non-carrier, it was not subject to Interstate Commerce investigation and approval under Section 5 of the Interstate Commerce Act (49 U.S.C.A. § 5).

Count I of the indictment charges the defendants with a conspiracy to defraud the United States in violation of 18 U.S.C.A. § 371.[1] It alleges that the defrauding of the United States consisted of defrauding it "of and concerning its governmental functions and rights," more particularly: (1) of its right to the honest and efficient administration of the affairs of the Interstate Commerce Commission, free from unlawful impairment and corruption by the defendants seeking to sell the controlling interest in an interstate motor carrier subject to Commission jurisdiction; (2) of its right to the honest, faithful and conscientious performance of their duties by Interstate Commerce Commission employees, free from solicitation and acceptance of money and things of value by such employees from persons, firms and corporations requesting explanations and interpretations of its statutes, rules and regulations; (3) of its right to the conscientious, faithful and honest services, decisions and actions of Interstate Commerce Commission employees, free from corruption, partiality, improper influence and dishonesty, and from the solicitation or acceptance of money and things of value by such employees from persons, firms and corporations concerned with the application, meaning, intent and interpretation of the Interstate Commerce Commission law and regulations, particularly as they relate to interstate carriers; and (4) of its right to insure that its employee neither directly nor indirectly received or agreed to receive any compensation for any services rendered or to be rendered by him in relation to any proceeding, contract, claim or other matter in which the United States is directly or indirectly interested before the Interstate Commerce Commission. Count I further alleges the commission of the above-mentioned overt acts for the purpose of effecting the objects of the conspiracy.

Count II of the indictment charges the defendant Bowles with receipt of a bribe in violation of 18 U.S.C.A. § 202.[2] It

---

1. "§ 371. *Conspiracy to commit offense or to defraud United States.*

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

"If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor."

2. "§ 202. *Acceptance or solicitation by officer or other person.*

"Whoever, being an * * * employee of, or person acting for or on behalf of

alleges that on or about September 19, 1955 Bowles, in his official capacity, received two $4,000 checks from Levenson "with intent to have influenced thereby" his "decision and action on a matter which might by law be brought before him in his official capacity," the matter being the above-mentioned transfer of the controlling interest in Maine Freightways, Inc.

Count III of the indictment charges the defendant Levenson with payment of a bribe in violation of 18 U.S.C.A. § 201.[3] It alleges that on or about September 19, 1955 Levenson tendered two $4,000 checks to Bowles, in his official capacity, "with intent to influence" Bowles' "decision on a matter, to wit, the sale of the controlling interest in Maine Freightways, Inc. * * *, which might by law be brought before him * * * in his official capacity * * *."

Count IV of the indictment also charges the defendant Levenson with payment of a bribe in violation of 18 U.S.C.A. § 201.[4] It alleges that on or about September 19, 1955 Levenson tendered two $4,000 checks to Bowles, in his official capacity, "with intent to make oppor-

tunity for the commission of a fraud on the United States, to wit, to defraud the United States of and concerning its governmental functions and rights in the following particulars, its right to the conscientious, faithful, uninfluenced, unbiased and honest services, decisions, actions and performances of its employee, George L. Bowles * * *."

Count V of the indictment charges the defendant Bowles with unlawful receipt of compensation in violation of the federal "conflict of interest" statute, 18 U.S.C.A. § 281.[5] It alleges that on or about September 19, 1955 Bowles, in his official capacity, "directly received compensation for services rendered by himself, in relation to a proceeding in which the United States was directly interested, before the Interstate Commerce Commission," namely, directly received two $4,000 checks from Levenson as compensation for services rendered to Levenson in relation to the above-mentioned transfer of the controlling interest in Maine Freightways, Inc. Count V also charges that, by making the payment of $8,000 to Bowles, the defendant Levenson aided and abetted Bowles in the unlawful re-

the United States, in any official capacity, * * * receives * * * any check * * * with intent to have his decision or action on any * * * matter * * * which may by law be brought before him in his official capacity * * * influenced thereby, shall be fined not more than three times the amount of such money or value of such thing or imprisoned not more than three years, or both; and shall forfeit his office or place and be disqualified from holding any office of honor, trust, or profit under the United States."

3. "§ 201. Offer to officer or other person. "Whoever * * * tenders any check * * * to any * * * employee or person acting for or on behalf of the United States, or any * * * agency thereof, in any official function * * * with intent to influence his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, or in his place of trust or profit, or with intent to influence him to commit or aid in

committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States, or to induce him to do or omit to do any act in violation of his lawful duty, shall be fined not more than three times the amount of such money or value of such thing or imprisoned not more than three years, or both."

4. Footnote 3, supra.

5. "§ 281. Compensation to Members of Congress, officers and others in matters affecting the Government. Whoever, being * * * (an) employee of the United States or any department or agency thereof, directly or indirectly receives or agrees to receive, any compensation for any services rendered or to be rendered * * * in relation to any proceeding * * * in which the United States is * * * directly or indirectly interested, before any * * * agency * * * shall be fined not more than $10,000 or imprisoned not more than two years, or both; and shall be incapable of holding any office of honor, trust, or profit under the United States."

ceipt of that compensation, in violation of the general "aiding and abetting" statute, 18 U.S.C.A. § 2.[6]

On August 29, 1958, prior to plea, each defendant filed a motion attacking the indictment under Rule 12 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. The motion filed by the defendant Bowles included four separately stated motions to dismiss, as follows:

I. A motion to dismiss the indictment in its entirety on the ground that it was brought, presented to the Court, and filed with the Clerk, while another indictment concerning and covering the same transactions was pending in the Court and had not been dismissed.

II. A motion to dismiss Counts I, II, III and IV of the indictment on the ground that they are improper and illegal in that said counts are either identical with or substantially the same as four counts of a prior indictment which was still pending in Court and had not been dismissed at the time the present indictment was brought, presented to the Court and filed with the Clerk.

III. A motion to dismiss Count I of the indictment in its entirety on the ground that it fails to set forth matters which, in contemplation of law, may be deemed to constitute the offense in violation of 18 U.S.C.A. § 371 which Count I purports to charge.

IV. A motion to dismiss Count I of the indictment in its entirety on the grounds that (a) the allegations in Count I pertaining to the defrauding of the United States cannot, in contemplation of law, function as the basis for the particular offense in violation of 18 U.S.C.A. § 371 which Count I purports to charge, and (b) the remaining allegations in Count I are so vague and uncertain that they cannot, in contemplation of law, or

in compliance with the Constitution of the United States (specifically the Fifth and Sixth Amendments thereof), be deemed to charge the crime in violation of 18 U.S.C.A. § 371 which Count I purports to allege.

The motion filed by the defendant Levenson included six separately stated motions to dismiss. The first four motions were identical with those included in the motion filed by the defendant Bowles as hereinabove stated. The fifth and sixth motions were as follows:

V. A motion to dismiss Count IV of the indictment on the ground that its allegations are so vague and uncertain that they cannot, in contemplation of law, or in compliance with the Constitution of the United States (specifically the Fifth and Sixth Amendments thereof), be deemed to charge the crime in violation of 18 U.S.C.A. § 201 which Count IV purports to allege.

VI. A motion to dismiss that portion of Count V of the indictment which charges the defendant Levenson with aiding and abetting the defendant Bowles in the unlawful receipt of compensation, in violation of 18 U.S.C.A. § 2, on the ground that, in contemplation of law, Levenson, by making the alleged payment of $8,000, to Bowles, cannot be deemed thereby to have aided and abetted the commission of a violation of 18 U.S.C.A. § 281 in such manner as to become guilty of a violation of 18 U.S.C.A. § 2. More specifically, it is alleged that the law does not permit a charge of aiding and abetting to lie under the circumstances set forth in Count V of the indictment.

Extensive briefs having been filed, hearing on the aforesaid motions was held before this Court on September 30, 1958, all parties being represented by

---

6. "§ 2. *Principals.*
"(a) Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal."

their respective attorneys. At the close of the hearing the Court announced from the Bench its rulings denying the first two motions (to dismiss the indictment in its entirety and to dismiss Counts I, II, III and IV of the indictment in their entirety), filed by both defendants, and also denying the fifth motion (to dismiss Count IV of the indictment) filed by the defendant Levenson. The Court reserved its ruling upon the third and fourth motions (to dismiss Count I of the indictment) filed by both defendants, and also reserved its ruling upon the sixth motion (to dismiss the aiding and abetting charge in Count V of the indictment) filed by the defendant Levenson.

Subsequent to the hearing the defendant Levenson on October 6, 1958 filed a motion for reconsideration of the Court's ruling sustaining Count IV of the indictment for the purpose of raising an objection not previously called to the Court's attention. Oral argument having been waived, the question thus presented has been submitted upon briefs filed by the parties.

In view of the importance of the issues which these motions raise, the Court will now formally restate the bases for the rulings previously announced and dispose of the remaining issues upon which its ruling was reserved.

I and II. The Defendants' Motions to Dismiss the Indictment in its Entirety and to Dismiss Counts I, II, III and IV of the Indictment in their Entirety

As has been stated, both defendants moved to dismiss the indictment in its entirety, or in the alternative, to dismiss Counts I, II, III and IV of the indictment in their entirety,[7] on the ground that the present indictment was brought while another indictment concerning

and covering the same transactions was pending in the Court and had not been dismissed.

The record will show that on June 27, 1958 an indictment was returned in this Court (Criminal No. 58–36) against these defendants covering the same transactions which constitute the basis of the charges in the instant indictment. The prior indictment contained four counts charging the defendants with violations of the conspiracy and bribery statutes (18 U.S.C.A. §§ 371, 201 and 202), the counts being either identical with or substantially the same as the first four counts of the present indictment. The only substantial change in the current indictment was the addition of Count V charging a violation of the conflict of interest statute (18 U.S.C.A. § 281). On July 10, 1958, prior to plea, the defendants in Criminal No. 58–36 filed identical motions to dismiss Count I of the prior indictment on the grounds set forth as the basis for the similar motions to dismiss Count I of the present indictment. Thereafter, the United States Attorney reconvened the Grand Jury, and the instant indictment was returned to this Court on August 14, 1958. On August 22, 1958 the defendants were arraigned on the present indictment, were granted time for the filing of motions attacking the indictment prior to entry of their pleas, and the United States Attorney, by leave of Court, filed a dismissal of the prior indictment under Rule 48(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A.[8]

The defendants are frank to concede that they have no authority to call to the attention of the Court in support of their motions, and the Court is satisfied that the law does not impose any such limitation as contended by the defendants upon the right of the government to present and have pending two in-

---

7. Even though Count II relates only to the defendant Bowles and Counts III and IV relate only to the defendant Levenson.

8. "Rule 48. *Dismissal.*
"(a) By Attorney for Government. The Attorney General or the United

States attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant."

dictments against the same defendant or defendants, although the government will not be permitted to proceed to trial upon both. The practice has been uniformly approved in the federal courts since at least 1853. United States v. Haupt, 7 Cir., 1945, 152 F.2d 771, 795, affirmed sub silentio, 1947, 330 U.S. 631, 67 S.Ct. 874, 91 L.Ed. 1145; United States v. Johnson, 7 Cir., 1941, 123 F.2d 111, 118, reversed on other grounds 1942, 319 U. S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546; United States v. Strewl, 2 Cir., 1938, 99 F.2d 474, 477, certiorari denied 1939, 306 U.S. 638, 59 S.Ct. 489, 83 L.Ed. 1039; Thompson v. United States, 9 Cir., 1913, 202 F. 401, 404, 47 L.R.A.,N.S., 206; United States v. Maloney, C.C.N.Y.1853, 26 Fed.Cas. p. 1149, No. 15,713a; See 42 C.J.S. Indictments and Informations § 34. The Court is further satisfied that the enactment of Rule 48(a) [9] has not altered the law in this respect. The only limitation therein imposed is upon the power of the United States Attorney, without leave of Court, to dismiss, not to bring, an indictment.[10]

For the foregoing reasons, the defendants' motions to dismiss the indictment in its entirety, and their alternate motions to dismiss the first four counts of the indictment in their entirety, have been denied.

### III and IV. The Defendants' Motions to Dismiss Count I of the Indictment

Count I of the indictment charges the defendants with a conspiracy to defraud the United States in violation of 18 U.S. C.A. § 371.[11] Generally speaking, it alleges that the object of the conspiracy was the defrauding of the United States of its governmental rights and functions, and particularly of its right to have the business of the Interstate Commerce Commission conducted honestly and efficiently and to have the duties of Interstate Commerce Commission employees, specifically of the defendant Bowles, performed honestly, faithfully and impartially, free from corruption and improper influence. In effectuation of the objects of the conspiracy, Count I further alleges the commission by the defendants of the overt acts which have already been set forth, consisting of the unlawful and corrupt receipt by Bowles from Levenson of money for services rendered by Bowles, in his official capacity, in assisting in the consummation of the sale of the controlling interest in an interstate trucking company operating under the jurisdiction of the Interstate Commerce Commission.

The defendants attack Count I of the indictment on the ground that it charges as the object of the conspiracy the payment to and receipt by a government employee of compensation for services rendered, and that this is not an indictable conspiracy. The contention is that the receipt by a government employee of compensation for services rendered is itself a crime in violation of 18 U.S.C.A. § 281,[12] the offense with which the defendant Bowles is charged in Count V of the indictment. The defendants argue that the crime of receipt of compensation proscribed by Section 281 necessarily requires the cooperation of the person giving the compensation, and that consequently the payor and the payee cannot be guilty of conspiracy to commit it. In support of this position they rely upon the line of cases holding that the law does not permit the government to prosecute as a criminal conspiracy acts which a statute, other than a conspiracy statute, designates as an independent substantive crime. United States v. Dietrich, C.C.Neb.1904, 126 F. 664 (ap-

---

9. Footnote 8 supra.

10. 18 U.S.C.A. §§ 3288 and 3289, upon which defendants place some reliance, are patently inapplicable here, since they relate solely to the right of the government to return a superseding indictment other-

wise barred by the statute of limitations. See e.g. United States v. Durkee Famous Foods, 1939, 306 U.S. 68, 59 S.Ct. 456, 83 L.Ed. 492.

11. Footnote 1, supra.

12. Footnote 5, supra.

plying the rule where the charge of conspiracy was that one of the defendants should agree to give and the other agree to receive a bribe in violation of the federal bribery statute); United States v. New York Cent. & H. R. R. Co., C.C.S.D.N.Y.1906, 146 F. 298, affirmed 1909, 212 U.S. 481, 29 S.Ct. 304, 53 L.Ed. 613 (applying the rule where the charge of conspiracy was that one of the defendants should give and the other receive an unlawful rebate in violation of the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq. and §§ 41–43); United States v. Sager, 2 Cir., 1931, 49 F.2d 725 (applying the rule where the charge of conspiracy was that the defendant attorneys should give and the defendant juror receive a bribe); and United States v. Katz, 1926, 271 U.S. 354, 355, 46 S.Ct. 513, 70 L.Ed. 986 (indicating the application of the rule to a charge of conspiracy between one who buys and one who sells whiskey in violation of the National Prohibition Act, 27 U.S.C.A.).[13] The defendants further argue that the failure of the Congress, in enacting 18 U.S.C.A. § 281, to render criminal the act of the person who pays the compensation which Section 281 makes it a crime for the government employee to receive, indicates an affirmative legislative policy that the person paying shall not be subject to punishment. In support of this second proposition they cite Gebardi v. United States, 1932, 287 U.S. 112, 53 S.Ct. 35, 77 L.Ed. 206 (holding that since the transported woman in the circumstances there involved could not be guilty of a violation of the Mann Act, 18 U.S.C.A. § 2421, she could not be indicted for a conspiracy with the transporting man to violate it); and Nigro v. United States, 8 Cir., 1941, 117 F.2d 624, 133 A.L.R. 1128 (holding that since the act of a drug addict in purchasing narcotics is not made criminal by the Harrison Anti-Narcotic Act, 26 U.S.C.A. (I.R.C.1939) §§ 2553, 2554, the addict cannot be guilty of a conspiracy with the seller to violate the Act).

■ After the most careful consideration the Court has concluded that it is unnecessary to explore the merits of the defendants' argument because of the falsity of the premise upon which it is based. The defendants' position rests upon the ground that Count I of this indictment charges a conspiracy to commit an offense against the United States, to wit, a violation of Section 281. The federal conspiracy statute, 18 U.S.C.A. § 371, proscribes a conspiracy "*either* to commit any offense against the United States, *or* to defraud the United States * * *" (emphasis supplied). Count I of the instant indictment clearly charges in terms a conspiracy to defraud the United States. The cited authorities are

13. The defendants distinguish the rule thus announced, which they term the Dietrich rule, from the rule, which they identify as Wharton's rule, stated in 2 Wharton Criminal Law (12th ed. 1932) § 1604, as first applied in Shannon v. Commonwealth, 1850, 14 Pa. 226, as follows: "When to the idea of an offense plurality of agents is logically necessary, conspiracy, which assumes the voluntary accession of a person to a crime of such a character that it is aggravated by a plurality of agents, cannot be maintained." The defendants contend that these rules, although related to the extent that they further a similar policy, are nevertheless separate and distinct, a distinction recognized in Gebardi v. United States, 1932, 287 U.S. 112, 121–123, 53 S.Ct. 35, 77 L.Ed. 206. In view of the Court's analysis of the nature of the conspiracy charged in Count I of this indictment, infra, it is unnecessary to consider the validity or the significance of the distinction thus drawn. It is also unnecessary for the Court to consider the true scope of the Dietrich rule and Wharton's rule; and specifically to determine their applicability, which is not free from doubt, to a charge of conspiracy such as that contained in Count I of this indictment, where the substantive offense is made criminal as to only one of the acting parties. Cf. United States v. Holte, 1915, 236 U.S. 140, 35 S.Ct. 271, 59 L.Ed. 504; May v. United States, 1949, 84 U.S.App.D.C. 233, 175 F.2d 994, certiorari denied 1949, 338 U.S. 830, 70 S.Ct. 58, 94 L.Ed. 505; Ex parte O'Leary, 7 Cir., 1931, 53 F.2d 956 and 56 F.2d 515, certiorari denied 1931, 283 U.S. 830, 51 S.Ct. 366, 75 L.Ed. 1443; Vannata v. United States, 2 Cir., 1923, 289 F. 424.

not applicable here because the defendants are not charged with a conspiracy to violate the provisions of Section 281. It is the defrauding of the United States which is charged as the object of the conspiracy. The receipt of compensation by a government employee for services rendered, while criminal, was "not the (object) of the conspiracy, but the means by which its object was to be accomplished." See Lisansky v. United States, 4 Cir., 1929, 31 F.2d 846, 849, 67 A.L.R. 67, certiorari denied 1929, 279 U.S. 873, 49 S.Ct. 514, 73 L.Ed. 1008.

A similar argument was advanced by the defendants and rejected by the courts in United States v. Manton, 2 Cir., 1938, 107 F.2d 834, certiorari denied 1940, 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012; Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, modifying 7 Cir., 1940, 116 F.2d 690, and Lisansky v. United States, supra; cf. May v. United States, 1949, 84 U.S.App.D.C. 233, 175 F.2d 994, certiorari denied 1949, 338 U.S. 830, 70 S.Ct. 58, 94 L.Ed. 505. In Manton it was charged that the defendants had conspired to defraud the United States of and concerning its right to have the lawful functions of the judicial power of the United States exercised and administered free from corruption, improper influence, dishonesty and fraud. In disposing, adversely to the defendants, of a like contention to that made here, the Court said (107 F.2d at page 839):

"We do not stop to inquire whether in the present case the conclusion would follow from the premises, since it is clear that the premises are not true * * *. The indictment does not charge as a substantive offense the giving or receiving of bribes; nor does it charge a conspiracy to give or accept bribes. It charges a conspiracy to obstruct justice and defraud the United States, the scheme of resorting to bribery being averred only to be a way of consummating the conspiracy and which, like the use of a gun to effect a conspiracy to murder, is purely ancillary to the substantive offense. The long argument upon the point consequently fails for lack of foundation to give it support."

Similarly here, the fact that the means by which Count I of the indictment alleges that the conspiracy was effectuated constituted a violation of Section 281 cannot alter the fundamental fact that Count I specifically charges the defendants with conspiring to defraud the United States by depriving it of its lawful governmental functions.

The defendants contend, nevertheless, that Count I of the indictment wholly fails to set forth facts which can properly be deemed, in legal effect, to constitute a defrauding of the United States as contemplated by Section 371. In support of this argument they say that the only factual matters alleged are those relating to money paid by Levenson to Bowles for services rendered by Bowles in his official capacity, without any allegation that such payment was made or received with intent to influence or to be influenced under circumstances which would constitute bribery. Consequently, defendants assert that there is no aspect of Count I which recites any action by Bowles or Levenson which is dishonest or improper apart from the illegality resulting from Section 281. Chief reliance is placed upon Hammerschmidt v. United States, 1924, 265 U.S. 182, 44 S.Ct. 511, 68 L.Ed. 968, in which the defendants say that the Supreme Court announced the law of the United States to be that, in cases in which no direct pecuniary or property loss to the government is involved, a defrauding of the United States within the meaning of Section 371 exists only if "deceit, craft or trickery, or at least * * * means that are dishonest" are shown (265 U.S. at page 188, 44 S.Ct. at page 512). Hence, the defendants argue that Count I of this indictment must fail because it does not allege the defrauding of the United States by any means involving deceit, craft, trickery or dishonesty within the rule of Hammerschmidt.

This Court does not think that the language relied upon from Hammerschmidt can be given such a limiting meaning, as that urged by the defendants, when the words are considered in the context in which they were used. The Supreme Court in Hammerschmidt was dealing with the sufficiency of an indictment charging a conspiracy to defraud the United States by dissuading persons, by the circulation of hand-bills and pamphlets, from registering for military service under the Selective Draft Act of 1917. The sole question was whether a conspiracy charge could be predicated upon "a mere open defiance of the governmental purpose to enforce a law by urging persons subject to it to disobey it." 265 U.S. at page 189, 44 S.Ct. at page 512. The Court held that it could not, and in this context the Court stated (265 U.S. at page 188, 44 S.Ct. at page 512):

"To conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest. It is not necessary that the government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane, or the overreaching of those charged with carrying out the governmental intention."

The defendants here seem to urge that Hammerschmidt stands for the proposition that a conspiracy to defraud the United States must contemplate means which are themselves criminal, either by common law or by federal statute. The facts in Hammerschmidt were such that this question was not presented. It seems obvious that the Court was not there considering whether an allegation of means which are themselves violative of law is essential to a charge of conspiracy to defraud under Section 371.

In the leading case of Curley v. United States, 1 Cir., 1904, 130 F. 1, certiorari denied 1904, 195 U.S. 628, 25 S.Ct. 787, 49 L.Ed. 351, the broad scope of the federal conspiracy statute was announced by the Circuit Court of Appeals for this circuit in the following language (130 F. at page 9):

"The language of the statute in question is very broad—'if two persons shall conspire to defraud,' etc. Now, it is, we think, not only reasonable, but the duty is upon us, in considering this statute, to have in mind the object of government in respect to a statute of this kind, as we would have in mind the object of a statute directing itself against wrongs destructive of individual property rights. *The chief aim of government being that of protection and service, it may safeguard itself against conspiracies or combinations, or acts intended to impair its proper administration, or conspiracies to impair any of the functions of the government.* It may declare it unlawful to combine for the purpose of doing any act which obstructs or interferes with the operations of government or any of its departments. *The government may unquestionably safeguard itself against being defrauded out of its right to administer an intelligent and honest service in the interests of the people.*" (Emphasis supplied.)

Similarly, in Haas v. Henkel, 1910, 216 U.S. 462, 30 S.Ct. 249, 54 L.Ed. 569, the Supreme Court authoritatively stated (216 U.S. at page 479, 30 S.Ct. at page 254):

"The statute is broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government."

See also Crawford v. United States, 1909, 212 U.S. 183, 29 S.Ct. 260, 53 L.Ed.

465; Joyce v. United States, 8 Cir., 1946, 153 F.2d 364, certiorari denied 1946, 328 U.S. 860, 66 S.Ct. 1349, 90 L.Ed. 1631; United States v. Moore, C.C.Or. 1909, 173 F. 122; United States v. Stone, D.C.N.J.1905, 135 F. 392.

■ It cannot be questioned that the business of the Interstate Commerce Commission is a lawful function of the federal government. It must follow that a conspiracy, the effect of which is to impair its integrity and efficiency, is a conspiracy to defraud the United States of its governmental right to the administration of its affairs, free from corruption and improper influence. Such was the necessary effect of the conspiracy charged in Count I of the instant indictment. It was Bowles' duty as a government employee to furnish conscientious, faithful and impartial explanations and interpretations of the Interstate Commerce Commission law and regulations to persons, firms and corporations requesting advice as to their meaning and application. It would be naive to suggest that this duty could be impartially and honestly discharged by an employee who had been promised, as alleged, a substantial gratuity for his services by a private individual directly interested in a matter then pending before such employee, in his official capacity. It cannot be believed that under such circumstances he would give an unbiased, honest opinion upon the question of whether the projected sale of the controlling interest in a motor carrier operating under the jurisdiction of the Interstate Commerce Commission was or was not subject to Commission investigation and approval. It is the opinion of this Court that such activity, independently of a separate statute, necessarily imports an impairment or obstruction of governmental function; that the payment and receipt of money under the circumstances set forth in Count I of the indictment would unavoidably have the effect of influencing official judgment and producing decisions and acts not in ac-cordance with the law; and that such activity comes within the categories of dishonesty and overreaching by those charged with carrying out governmental functions which are proscribed by Hammerschmidt. This Court cannot subscribe to the view urged upon it by these defendants that the "attitudes of every day morality" do not attribute "fraud, deceit, trickery or chicanery" to a situation in which an official receives money for services which he is obliged to perform as part of his official duties, or that "common morality" would not look upon the transaction charged in Count I of this indictment as dishonest and overreaching. (Def. Reply Brief p. 8). The cited authorities, including Hammerschmidt, have firmly established the proposition that Section 371 was intended to insure the wholesome administration of the government of the United States and to protect that government against being defrauded of its inherent right to the honest, impartial and efficient service of its employees.

Count I of the indictment charges that defendants conspired to defraud the United States of its governmental functions and rights by dishonest means. This is an indictable conspiracy within the meaning of 18 U.S.C.A. § 371. Hence, the defendants' motions to dismiss Count I must be denied.

## V. The Motion of the Defendant Levenson to Dismiss Count IV of the Indictment

■ As has been stated, the defendant Levenson originally moved to dismiss Count IV of the indictment on the ground that its allegations were so vague and uncertain that they failed, in legal contemplation or in compliance with the Constitution of the United States (specifically the Fifth and Sixth Amendments thereof), to charge a crime in violation of 18 U.S.C.A. § 201.[14] At the close of the hearing the Court denied the motion, being satisfied that Count IV contained allegations sufficient to meet all consti-

14. Footnote 3, supra.

tutional requirements and the requirements of Rule 7(c) of the Federal Rules of Criminal Procedure, 18 U.S.C.A.[15] The Court suggested that if further specification were necessary in order that the defendant might adequately prepare for trial, a motion for a bill of particulars was the appropriate remedy. Rule 7(f), Federal Rules of Criminal Procedure, 18 U.S.C.A.

Subsequent to the hearing, the defendant Levenson moved for reconsideration of the Court's ruling for the purpose of raising an issue not previously called to the Court's attention. The contention thus raised is that Count IV fails to allege the specific intent required by Section 201 as an essential element of the crime of bribery therein defined.

■ It is the opinion of the Court that the defendant must prevail in his contention, and that, accordingly, Count IV of the indictment must be dismissed because it does not allege an essential element of the crime which it purports to charge.

■ The relevant language of Section 201, upon which Count IV of the indictment is based, makes criminal the payment of any money or thing of value, including checks, to a government employee with a specific intent which is defined as follows:

"* * * with intent to influence him (the bribee) to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States * * *."

Count IV of the instant indictment charges the payment of two $4,000 checks by Levenson to Bowles "* * * with intent to * * * make opportunity for the commission of a fraud, on the United States * * *." It does not charge Levenson with any intent *to influence Bowles to* "make opportunity for the commission of any fraud, on the United States." In the view of this Court the logic of the language, the legislative history, and the consistent judicial interpretation of Section 201, compel the conclusion that the specific *intent to influence the government employee* is an essential element of the crime of bribery therein defined, and that the failure of Count IV to allege this specific intent renders it fatally defective.

An analysis of Section 201 reveals that the entire section is directed at attempts *to influence government employees* in various aspects of their official conduct. A reading of the whole section [16] discloses that it makes criminal the payment of any money or thing of value to a government employee (a) *with intent to influence* his "decision or action on any question * * * which may at any time be pending, or * * * be brought before him in his official capacity * * *"; or (b) *with intent to influence* him "to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States"; or (c) *with intent to induce* him "to do or omit to do any act in violation of his lawful duty." The specific intent to affect conduct on the part of the government employee is the fundamental feature which is common to each of the alternatives proscribed by the statute. The plain purport of the statute is to make criminal, action done with intent to influence official conduct in some manner.

---

15. Rule 7(c) provides, in pertinent part, that "The indictment * * * shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." It is also fundamental that an indictment is sufficient to meet constitutional requirements if, when construed as a whole, it informs the accused of the nature of the charges against him so that he can prepare a defense and plead double jeopardy in a second prosecution for the same offense. Rosen v. United States, 1896, 161 U.S. 29, 16 S.Ct. 434, 480, 40 L.Ed. 606; Vasquez v. United States, 5 Cir., 1956, 229 F.2d 288, certiorari denied 1956, 351 U.S. 950, 76 S.Ct. 846, 100 L.Ed. 1474. See United States v. Lattimore, 1954, 94 U.S.App.D.C. 268, 215 F.2d 847, 850, 860.

16. Set forth in Footnote 3, supra.

The construction of Section 201 urged by the government in support of Count IV of this indictment defies any but the most strained interpretation of the English language. Conceding that an intent to affect official conduct is essential to all other parts of the section—viz., with regard to the government employee's "deciding" or "acting" on any question before him in his official capacity; with regard to the government employee's "committing," "aiding in committing," "colluding in," or "allowing" any fraud; and with regard to the government employee's "doing" or "omitting to do" any act in violation of his lawful duty— the government yet urges that the concept of "making opportunity for the commission of any fraud" is to be treated differently, and is defined as criminal by the statute if such was the intent of the briber, even though there was no intent by the briber to influence the bribee. The overall design of the statute negatives such an interpretation, and requires the conclusion that "making opportunity for the commission of any fraud" is only another alternative used to describe actions by the government employee which are intended to be influenced by the conduct of the briber.

The legislative history of Section 201 reinforces the legislative intent manifest from the language of the statute itself. Section 201, in its present form, had its genesis in three different acts. The basic section was enacted in 1853 as part of an act entitled, "An Act to prevent Frauds upon the Treasury of the United States." 10 Stat. 171, c. 81, § 6 (1853). The marginal note read "Penalty for bribery, or undue influencing, of members of Congress." The statute made criminal, payments to a member of Congress "with intent to influence his vote or decision on any question * * * which may then be pending, or may * * be brought before him in his official capacity * * *."

The clause now under consideration was enacted in 1866 as part of an act entitled "An Act to reduce Internal Taxation and to amend * * * (a prior Internal Revenue Law)." 14 Stat. 168, c. 184, § 62 (1866). The marginal note read, "Penalty for giving or offering, &c. any bribe, or present, &c. to any United States officer or official, with intent to influence his action on anything before him, or to cause him to commit any fraud upon the revenue; or for accepting or receiving the same." The intent proscribed by the 1853 statute was supplemented by the words " * * * or with intent to influence any such officer or person to commit, or aid or abet in committing, any fraud on the revenue of the United States, or to connive at or collude in, or to allow or to permit, or make opportunity for the commission of any such fraud * * *."

The same session of the Congress also enacted the last part of the present Section 201 in an act entitled "An Act further to prevent Smuggling and for other Purposes." 14 Stat. 186, c. 201, § 35 (1866). The marginal note read, "Penalty for offering to officers of revenue, &c. any gift or bribe, to induce a violation of official duty; upon officer &c. for asking or receiving any gift or bribe." In terms of intent, this section read " * * * with intent to influence or induce such officer or other person or persons to do any act in violation of his or her or their official duty, or to refrain from doing anything which, under the law, it is or shall be his or her or their duty to do * * *."

In 1874 these three sections were consolidated as Section 5451 of Chapter 5 of Title 70 of the Revised Statutes of the United States. U.S.Rev.Stat. Title 70, c. 5, § 5451 (1874). The heading of Section 5451 was "Bribery of any United States officers." Its marginal notation contained only citations to the statutes above quoted. The revision contained the precise language with respect to intent found in the present Section 201.

The legislative history which has just been recited clearly indicates just what the Congress intended to punish by the various enactments which have now been consolidated in Section 201. They

were all directed at attempts to influence government employees in one way or another. They uniformly condemned bribery; and bribery always imports an influencing.[17]

Accordingly, the courts construing Section 201 and its predecessor sections have consistently held that their purport was to make a federal statutory offense as to United States officers and employees that which was punishable as bribery at common law, United States v. Green, D.C.N.Y.1905, 136 F. 618, affirmed 1905, 199 U.S. 601, 26 S.Ct. 748, 50 L.Ed. 328, and such courts have uniformly recognized an intent to influence as an essential element of the offense. Thus, in the case of In re Yee Gee, D.C.Wash.1897, 83 F. 145, the Court stated (83 F. at page 146):

> "To make out a case under this section, it is necessary for the prosecution to prove: (a) An offer to bribe; (b) that such corrupt offer was made to an officer of the United States, or a person at the time acting for or on behalf of the United States in an official function; (c) *that the offer was made to influence the officer or person* in the doing of some act or performance of some duty in his official capacity." (Emphasis supplied.)

Similarly, in Kemler v. United States, 1 Cir., 1942, 133 F.2d 235, the specific intent required by Section 201 was described as follows (133 F.2d at page 238):

> "The clear purpose of the statute is to protect the public from the evil consequences of corruption in the public service. Thus the gravamen of the offense described therein is the giving or offering of a bribe to a person acting on behalf of the Unit-

ed States *for the purpose of influencing official conduct."* (Emphasis supplied.)

And in Hurley v. United States, 4 Cir., 1951, 192 F.2d 297, the intent required by the statute is defined in the following language (192 F.2d at page 300):

> "Under the statute, the offerer is forbidden to give money or other things of value *with intent to influence the bribee's decision* on a matter before him in his official capacity, *or to induce him* to commit a fraud on the United States, or to breach his lawful duty." (Emphasis supplied.)

Because Count IV of the present indictment fails to allege an intent by the alleged briber (Levenson) *to influence the alleged bribee (Bowles)* as the person who was to "make opportunity for the commission of a fraud, on the United States," it does not allege an offense described by Section 201. Accordingly, the motion of the defendant Levenson to dismiss Count IV of the indictment must be granted.

VI. The Motion of the Defendant Levenson to Dismiss the Aiding and Abetting Charge in Count V of the Indictment

Count V of the indictment charges the defendant Bowles with the receipt of compensation for services rendered by him, in his official capacity as an Interstate Commerce Commission employee, in violation of the "conflict of interest" statute, 18 U.S.C.A. § 281.[18] It also charges that the defendant Levenson aided and abetted Bowles in the unlawful receipt of that compensation, in violation of the "aiding and abetting" statute, 18 U.S.C.A. § 2.[19]

The defendant Levenson has moved to dismiss the aiding and abetting charge

---

17. Webster defines "bribe" as: "1. A price, reward, gift or favor bestowed or promised with a view to pervert the judgment or corrupt the conduct of a person in a position of trust. 2. That which seduces; seduction; allurement; * * * to give a bribe to; to induce or

influence, or to gain, by a bribe." Webster's New Collegiate Dictionary, 6th ed., 1958.

18. Footnote 5, supra.

19. Footnote 6, supra.

against him on the ground that the law does not permit a charge of aiding and abetting under the circumstances set forth in Count V. Specifically, the defendant contends that Section 281 does not make criminal the act of a person who pays compensation to a government employee for services rendered, and that the failure of the Congress to make the act of the person who pays such compensation a crime evidences an affirmative legislative policy that the person paying shall not be subject to punishment, either directly or indirectly, by a charge of aiding and abetting. Chief reliance is placed by the defendant upon the cases of Gebardi v. United States, 1932, 287 U.S. 112, 53 S.Ct. 35, 77 L.Ed. 206; Nigro v. United States, 8 Cir., 1941, 117 F.2d 624, 133 A.L.R. 1128, and the dissenting opinion of Stephens, J. in May v. United States, 1949, 84 U.S.App.D.C. 233, 175 F.2d 994, 1011, certiorari denied 1949, 338 U.S. 830, 70 S.Ct. 58, 94 L. Ed. 505. The government attempts to support Count V as against the defendant Levenson under the general aiding and abetting statute and upon the authority of the holding and majority opinion of the Court in May v. United States, supra, in which the Court refused to write into the otherwise unqualified language of the aiding and abetting statute such an exception as that urged by the defendant.

 This Court thinks that the defendant Levenson must be sustained in his contention that, in the circumstances alleged in Count V of the indictment, he could not be guilty of aiding and abetting a violation by Bowles of Section 281. Section 281, which makes criminal the act of a government employee in receiving compensation, does not make the giving of compensation to a government employee a crime. This Court concurs with the view expressed by Judge Stephens in the May case (175 F.2d at page 1018), that in Gebardi the Supreme Court authoritatively declared the law to be that where a statute defines as

criminal an act which necessarily requires for its commission the participation of two persons, and the statute specifically makes only one of those persons criminally liable, the clear meaning is that the other person is not liable for that act, and may not be charged as an aider or abettor. In the Gebardi case, which has been discussed above,[20] the Court stated (287 U.S. at page 119, 53 S.Ct. at page 36):

> "In applying this criminal statute (the Mann Act) we cannot infer that the mere acquiescence of the woman transported was intended to be condemned by the general language punishing those who aid and assist the transporter, any more than it has been inferred that the purchaser of liquor was to be regarded as an abettor of the illegal sale. State v. Teahan, 50 Conn. 92; Lott v. United States [9 Cir.], 205 F. 28 [46 L.R.A.,N.S., 409]; cf. United States v. Farrar, 281 U.S. 624, 634 [50 S.Ct. 425, 74 L.Ed. 1078]. The penalties of the statute are too clearly directed against the act of the transporter as distinguished from the consent of the subject of the transportation."

While in Gebardi the Court was concerned with the interpretation and application of the Mann Act, it specifically rested its decision "upon the ground that we perceive in the failure of the Mann Act to condemn the woman's participation in those transportations which are effected with her mere consent, evidence of an affirmative legislative policy to leave her acquiescence unpunished." 287 U.S. at page 123, 53 S.Ct. at page 38. In Nigro v. United States, supra, evidence of a similar affirmative legislative intent to leave the purchaser of narcotics unpunished was predicated upon the failure of the Harrison Anti-Narcotic Act to make the act of purchasing marcotics a crime. Likewise here, since Section 281 does not make it a crime to pay compensation to a government employee, Levenson, who was the

20. Page 15, supra [183 F.Supp. 244].

necessary participant in Bowles' act of receiving compensation, may not be indirectly punished by a charge of aiding and abetting.

The government argues, however, following the reasoning of the majority in the May case, that Congress must, when it enacted Section 281, have had the general aiding and abetting statute in mind. Hence, the government says in the language of the majority in the May case, "that Congress, being fully aware of the general law on aiding and abetting, knew that when it made receipt of compensation a criminal offense, it thereby made the payor guilty, because the payor certainly aids and abets the receipt." (175 F.2d at page 1004). But the fallacy in this argument was clearly demonstrated by Judge Stephens in his dissenting opinion. He there points out that it must be clear that Congress did not have the general aiding and abetting statute in mind at the time the original statute making it criminal for a government employee to receive compensation was enacted (in 1864),[21] for there was then no general aiding and abetting statute in existence.[22] Congress could not, therefore, at that time have intended that the giver of compensation to a government employee should be criminally liable.

For the foregoing reasons, the motion of the defendant Levenson to dismiss the aiding and abetting charge against him in Count V of the indictment must be granted.[23]

21. 13 Stat. 123, c. 119 (1864).

22. The only aiding and abetting statute in existence in 1864 was one in respect of piracy. 1 Stat. 114, c. 9, § 10 (1790). In 1870 an aiding and abetting statute was enacted relative to crimes in connection with naturalization of aliens. 16 Stat. 254, c. 254, § 2 (1870). It was not, however, until 1909 that the general aiding and abetting statute was enacted. 35 Stat. 1152, c. 321, § 332 (1909).

23. Although the case of Opper v. United States, 1954, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101, was not called to the attention of the Court in brief or argument, the Court has noted that Count I

of the indictment in that case charged that the petitioner, by the payment of compensation to a government employee, aided and abetted the government employee in the receipt of the compensation, which was charged in the same count to be a violation by the government employee of Section 281. The question here raised as to the sufficiency of the indictment was not, however, one of those presented on certiorari to the Supreme Court, nor was it discussed in the opinion of the Court of Appeals for the Sixth Circuit affirming the petitioner's conviction after trial. See Opper v. United States, 6 Cir., 1954, 211 F.2d 719. Apparently the issue was not raised or considered.