**Carl Henry WOELFEL, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 7209.**

United States Court of Appeals
Fourth Circuit.

Argued June 15, 1956.
Decided Sept. 22, 1956.

Harry C. Hewson and G. T. Carswell, Charlotte, N. C. (Henry E. Fisher and Robinson, Jones & Hewson, Charlotte, N. C., on the brief), for appellant.

William I. Ward, Jr., Asst. U. S. Atty., Statesville, N. C. (J. M. Baley, Jr., U. S. Atty., Asheville, N. C., on the brief), for appellee.

Before PARKER, Chief Judge, SOPER, Circuit Judge, and BRYAN, District Judge.

BRYAN, District Judge.

Carl Henry Woelfel appeals against his conviction for the violation of section 202, title 18, United States Code providing, in its pertinent part, that "Whoever, * * * acting for or on behalf of the United States, in any official capacity, under or by virtue of the authority of any department or agency thereof * * * asks * * * any money, or any * * * gratuity * * * with intent to have his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, * * * influenced thereby, shall be" punished.

He was engaged as Post Engineer by the United States Army Ordnance Corps in the conversion of an industrial building at Charlotte, North Carolina into a munitions plant. A private concern, under the direction of the Corps of Engineers, had undertaken the necessary remodeling and construction in a general contract. Whenever a change was desired by Ordnance in the contract specifications it would be accomplished on a request of Ordnance's local officer in charge directed to the Corps of Engineers and, upon the latter's approval, the modification would be arranged with the contractor by the Corps of Engineers. The Post Engineer could not authorize a change in the contract specifications, and had nothing to do with the agreements between the Engineers and the general contractor, or between the latter and its subcontractors, after a specification change had been requested; but he was required to advise with the Ordnance officer in charge upon suggested or needed changes, to interview salesmen of the necessary building supplies, and to inspect and report upon all the work for Ordnance.

The prosecution's case begins in December, 1954, with a proposal initiated by the officer in charge to amend the prime contract so as to substitute wood block flooring for the resilient floor covering originally specified. He directed Woelfel to ascertain the cost of a wood replacement and in this way Woelfel met the representatives, including one Potter, of a wood flooring company of Georgia. On January 3, 1955 Potter brought samples of his employer's product to Charlotte and discussed them with Woelfel. Satisfied that the wood blocks should make a more serviceable flooring and mean a substantial monetary saving, the officer in charge ordered the defendant to write the Corps of Engineers recommending the change. This Woelfel did on January 5 and promptly the change was accepted by the Engineer Corps. A chronicle of the defendant's subsequent behavior gives in narrow focus the Government's case.

January 7—Woelfel by telephone informed Potter, at his residence in Atlanta, that apparently the specification would be changed to wood block flooring, and when Potter commented, "That's fine", Woelfel said, "Yes, but I want something more than 'that's fine' later

on. Do you know what I mean?" Potter gave him no answer.

January 10—Pursuant to an appointment made in the foregoing telephone conversation, Potter came to Woelfel's office, and the following colloquy occurred. Said Woelfel, "Potter, how much will this job run in dollars and cents?" Potter, "Well, I don't know. I haven't seen a set of plans, but if the yardage figures we have been kicking around stand up, I would estimate it would be between sixty and seventy thousand dollars." Woelfel, "That's a good job, isn't it?" Potter, "Yes, it is." Woelfel, "It has been handed to you on a silver platter, hasn't it?" Potter, "Virtually that's what's happened up to now, but we still have to sell this job to the general contractor." Woelfel, "Well, you are not going to have any trouble selling this job to the general contractor. Do you appreciate what I have done on this job?" Upon assurance by Potter of his appreciation, Woelfel resumed, "Does your company appreciate what I have done? Then it's your turn to start talking." Potter, "Mr. Woelfel, you are a grown man and I am a grown man. What is the score here on this job?" Woelfel, "If they want to make me a little token of appreciation, it's nobody's damned business."

Thereafter the two drove together to the Charlotte office of the consulting civilian engineers. Inquiring there "if the specification change had gone to the contractor", Woelfel was handed the book of specifications which showed that "wood block, creosoted wood block" had been substituted for the initial type of flooring. Woelfel then produced Potter's sample, saying "This is the block

we want". Returning to Potter's automobile and on Potter's observing to Woelfel upon the dubious reliability of the car, Woelfel remarked, "My car is old and pretty well shot. Maybe I will get a new car out of this deal", Potter responding, "Carl, you are asking for a lot of money." "Well", said Woelfel, "you know the contractor hasn't seen any prices from your company. You can raise those prices when you submit your bid to the contractor to cover it."

January 12—On instructions of his company, Potter telephoned Woelfel and stated to him that the company had turned down Woelfel's proposition and would not become engaged in it, and told Woelfel he could stop the "change-over from going to the contractor", adding, "you will have time to do it". Woelfel answered, "Well, it's too late to do that now. You are going to get this contract. There wasn't anything suppose to happen until later on, and perhaps they will have a change of heart in the meantime."

January 21—Potter's company quoted its prices to the general contractor.

February 3—The contract was awarded to this company.

February 7—Report of Woelfel's conduct was made by the company to an Army General in Atlanta.

September 20—Woelfel was indicted and relieved of his duties, but meanwhile he had remained as Post Engineer, periodically inspected the company's installation of the wood flooring, and had criticized portions of the work as unsatisfactory.

The indictment[1] charged that the "question or matter" upon which the

---

1. "The grand jury charges: That on or about January 6, 1955, continuing through on or about January 12, 1955, at Charlotte, Mecklenburg County, within the Western District of North Carolina, Carl Henry Woelfel, an employee of the United States, and in particular the United States Army Ordnance Corps, and a person or employee acting for and on behalf of the United States in his official capacity as an Engineer for the Charlotte

(North Carolina) Ordnance Missile Plant, Philadelphia Ordnance District, United States Army Ordnance Corps, an agency of the United States, asked for and sought a gratuity or gift in the form of an automobile or other thing of value from L. R. Potter, a salesman for Southern Wood Preserving Company of Atlanta, Georgia, or from Southern Wood Preserving Company itself, with intent to have his (the said Woelfel's) decision or

"decision or action" of Woelfel was intended to be influenced was the "installing a wood block or other type floor at the Charlotte Ordnance Missile Plant, which installation was at that time pending; and which was brought before the said Woelfel in his official capacity".

Appellant assigns error in the trial as follows:

(1) That the case was tried by the court and the Government on the theory that the "decision or action" of the defendant alleged in the indictment related only to the change in the flooring specification of the prime contract; that the evidence of the United States disclosed that the defendant did not ask for the gratuity until after he had made every decision and taken every action open to him in respect to the specification change, and had done so without any prior promise or understanding between him and the flooring company as to what would be his decision or action; that in these circumstances the solicitation was not a violation of the statute; and that the court, therefore, should have granted his motion for a judgment of acquittal;

(2) That, if an acquittal was not to be ordered by the court, then the jury should have been instructed that if they found these to be the facts, they should acquit; but that the court failed so to charge; and

(3) That the defendant, for the purpose of establishing that he had not been influenced in favor of the company, proffered in evidence the critical inspections which he had made of the flooring company's installation work; but the court allowed this evidence to be considered by the jury solely as possible impeachment of Potter, that is, only so far as the adversity of the reports might account for Potter's incriminating evidence against Woelfel.

Undoubtedly the judge did hold, throughout the trial, that under the indictment the change in the specifications was the sole "question or matter" upon which the "decision or action" of the accused was subjected to improper influence. For example, the judge stated the accusation of the indictment to be that the defendant had endeavored "to secure for himself some gratuity by way of the influence which he exercised in the contract". Later he reaffirmed that the charge was that "these specifications * * * were changed from what originally was contemplated by the Engineers * * * and that this defendant undertook to secure for himself a gratuity on his part in effecting the change, in bringing it about, and making possible for this Atlanta concern to have the opportunity of selling its product, which otherwise it would not have sold, had the specifications not been changed." Further, he emphasized, "I am trying the case on the theory that the contract, insofar as its being performed, is purely and simply a side line issue."

■■ This, we think, was too great a constriction of the case, but as the misconception helped the accused he has no grievance there. However, the District Judge saved the case from hurt from this mistake when he denied the defendant a directed verdict. Clearly there was sufficient evidence to present a jury question under the indictment fairly interpreted, because the "decision or action" entrusted to Woelfel did not end with the specification change.

"Installing" of the wood block floor, as charged in the indictment, involved not only the change in the specifications but more; it embraced also the putting of the floor in place. The evidence showed that among his other duties in regard to this job, Woelfel must inspect and report upon its performance, in workmanship and in materials, and these

---

action influenced thereby on the question or matter of installing a wood block or other type floor at the Charlotte Ordnance Missile Plant, which installation was at that time pending; and which was

brought before the said Woelfel in his official capacity or in his place of trust or profit, in violation of Title 18, United States Code, Section 202."

duties could not arise in respect to the flooring, until after the specification had been changed and until a time after Woelfel's final approach to Potter. Again, for several weeks after Woelfel last importuned Potter, Woelfel was in a position, and had the opportunity, to recommend reconsideration and revocation of the specification change. During that period Potter's company had not firmly quoted its prices to the general contractor, nor had the work been awarded to Potter's company. Obviously, if this evidence were accepted by the jury, they could find that the favor of Woelfel was worthwhile to the flooring contractor long after Woelfel's entreaty of Potter. On this evidence it was for the jury to say whether the defendant's solicitation was venal.

 However, the defendant was entitled to have the jury instructed on the legal effect of his contention for the evidence—that if they believed that the request for a gratuity was not made by the accused until after he had exhausted his power of decision or action on the question or matter before him, and was not made under any prior promise or understanding that a gratuity would be forthcoming, then his request did not constitute a transgression of the statute. This is a sound construction of the act and the District Judge should have so charged the jury. While such a solicitation would be contemptible, it would not be indictable, for it would not be possible for prior "decision or action" of an employee to be affected by later, unanticipated gifts, however rewarding they might be. Timely exception, adequate to advise the trial judge of his omission, we think, was taken; but whether or no, the defense should have been explained to the jury, and the point is so vital we must notice it. Screws v. United States, 1945, 325 U.S. 91, 107, 65 S. Ct. 1031, 89 L.Ed. 1495; Samuel v. United States, 9 Cir., 1948, 169 F.2d 787, 792. For this error the judgment of conviction must be set aside and a new trial ordered.

In the retrial the court should admit, without limitation upon its purpose, such properly tendered evidence of the defendant's inspections and reports upon the flooring company's work as either party desires to present. It is relevant to guilt or innocence, for it proves the conduct of the accused, a circumstance to be considered by the jury in the determination of his intent.

The judgment below will be reversed and the case remanded for a new trial.

Reversed.