**UNITED STATES of America**

v.

**Albert Solomon HEFFLER and Donald Joseph Cecchini, Donald Joseph Cecchini, Appellant.**

**No. 16946.**

United States Court of Appeals Third Circuit.

Argued March 5, 1968.

Decided Sept. 27, 1968.

Rehearing Denied Nov. 6, 1968.

A. A. Guarino, Philadelphia, Pa., for appellant.

James C. Lightfoot, Asst. U. S. Atty., Philadelphia, Pa. (Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

## OPINION OF THE COURT

Before HASTIE, Chief Judge, and SEITZ and VAN DUSEN, Circuit Judges.

HASTIE, Chief Judge.

The appellant, Cecchini, was convicted on two counts of an indictment, one charging that he joined with a confederate, Heffler, in a conspiracy to violate section 201(c) of title 18, United States Code, and the other charging him, as an employee of the United States, with a substantive violation of section 201 (c).[1] A sentence of imprisonment for two years, with all but 60 days of the prison term suspended, was imposed generally on the conviction.

We consider first whether the conviction on the substantive count can stand. There was evidence that the appellant's alleged co-conspirator, Heffler, approached a manufacturer, Eggart, and offered for a fee that, through contacts within the military organization, he would see that Eggart was the successful bidder on contracts to be awarded by the Air Force Materiel Command. Eggart advised the F. B. I. of this offer and thereafter reported to the agency the course of his dealing with the alleged conspirators. Eggart was visited subsequently by Cecchini and Heffler together, and Cecchini alone. The manufacturer testified that upon these occasions Cecchini enlarged upon his own status and influence within the Air Force Materiel Command, assured the manufacturer that he could influence the selection of contractors and the allowance of favorable variances to contractors, boasted that he had influenced awards in two other cases, and solicited a consideration in return for similar assistance to Eggart.

We turn now to the statute said to have been violated. The essential elements of an offense under section 201(c) (1) or (3) are the solicitation by "a public official" of a bribe "in return for" either violating "his official duty" or "being influenced in his performance of any official act." The statute is made more explicit by section 201(a) which specifies, first, that " 'public official' means * * * an officer or employee * * * acting for or on behalf of the United States * * * in any official function" and, second, that " 'official act' means any decision or action on any * * * matter * * * which may by law be brought before any public official, in his official capacity * * *." Thus, by its terms the statute is limited to corrupt solicitation of bribery as the price of corrupt conduct or decision on the part of the soliciting federal employee in any matter pending or to come before him in his official capacity.

In the area of our present concern, the solicitation of a bribe by a government contracting officer in return for an award of a contract or an approval of a contractual variance would clearly be a violation of section 201(c). Cecchini, however, was not a contracting officer. At the times in question he was a senior technician, sometime acting chief, of the Ground Support Equipment Section in the Directorate of Research, Development and Engineering at the St. Louis installation of the Army Aviation Materiel Command. At the trial of this case, two officials of the Command testified as to Cecchini's duties. They were explicit in their testimony that requests by contractors for contract variances would be referred to Cecchini's section for technical evalua-

---

1. Section 201(c) (1) & (3) reads as follows:

    "(c) Whoever, being a public official or person selected to be a public official, directly or indirectly, corruptly asks, demands, exacts, solicits, seeks, accepts, receives, or agrees to receive anything of value for himself or for any other person or entity, in return for:

    "(1) being influenced in his performance of any official act; or

    * * * * *

    "(3) being induced to do or omit to do any act in violation of his official duty; or * * *."

**926**

tion and expert advice whether the changes would be consistent with the government's needs and interest. It was also testified that contracting officers often relied upon these technical evaluations and recommendations in deciding whether to approve requested variances.

 Thus, in the performance of his official duty Cecchini would have occasion to make reports and recommendations that were likely to influence the allowance or disallowance of contract variances. And according to the testimony of Eggart, favorable action on variances after Eggart should obtain a contract or contracts, was one type of advantage which Cecchini promised to obtain for Eggart in return for the solicited bribe. The statute "is applicable to a situation where the advice and recommendation of the Government employee involved would be influential * * * even though the employee did not have the authority to make the final decision." Krogmann v. United States, 6th Cir. 1955, 225 F.2d 220, 225.

Thus analyzed, Cecchini's conduct was the very kind of corrupt solicitation of a consideration for official misconduct as section 201(c) makes criminal. In a case involving a parallel provision of this statute we said:

"It is a major concern of organized society that the community have the benefit of objective evaluation and unbiased judgment on the part of those who participate in the making of official decisions. Therefore, society deals sternly with bribery which would substitute the will of an interested person for the judgment of a public official as the controlling factor in official decision. The statute' plainly proscribes such corrupt interference with the normal and proper functioning of government." See United States v. Labovitz, 3d Cir. 1958, 251 F.2d 393, 394.

 Since the evidence adequately supported the conviction of Cecchini on the substantive count, it is unnecessary to consider the sufficiency of the evidence to prove a conspiracy.

Several other points have been urged in support of this appeal. We have examined each of them and have found no reversible error.

The judgment will be affirmed.