**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Anthony ARROYO and Frank Sanchez, Defendants-Appellants.**

No. 77–2257.

United States Court of Appeals, Seventh Circuit.

Argued April 24, 1978.

Decided July 31, 1978.

Rehearing and Rehearing En Banc Denied Sept. 5, 1978.

650

John M. Janewicz, Chicago, Ill., for defendants-appellants.

James G. Schweitzer, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT and CUMMINGS, Circuit Judges, and MARKEY, Chief Judge.*

MARKEY, Chief Judge.

The jury found Arroyo and Sanchez guilty of conspiracy to corruptly solicit a bribe in violation of 18 U.S.C. § 371 (1976) and Arroyo guilty of the substantive offense—the acts of corruptly soliciting and receiving the bribe in violation of 18 U.S.C. § 201(c)(1) (1976).[1] Motions for acquittal and a requested instruction were based on the view that § 201(c)(1) must be limited to soliciting a bribe before the accused public official has performed the "official act"[2] intended to be influenced. The district court denied the motions and refused the request.[3] We affirm.

---

* Chief Judge Howard T. Markey of the United States Court of Customs and Patent Appeals is sitting by designation.

1. 18 U.S.C. § 201(c)(1) (1976) provides:

"§ 201. Bribery of public officials and witnesses

\* \* \* \* \* \* \*

"(c) Whoever, being a public official or person selected to be a public official, directly or indirectly, corruptly asks, demands, exacts, solicits, seeks, accepts, receives, or agrees to receive anything of value for himself or for any other person or entity, in return for:

"(1) being influenced in his performance of any official act;

\* \* \* \* \* \* \*

"Shall be fined not more than $20,000 or three times the monetary equivalent of the thing of value, whichever is greater, or imprisoned for not more than fifteen years, or both, and may be disqualified from holding any office of honor, trust, or profit under the United States."

2. The term "official act" is defined in 18 U.S.C. § 201(a) (1976):

"'official act' means any decision or action on any question, matter, cause, suit, proceeding or controversy, *which may at any time be pending*, or which may by law be brought before any public official, in his official capacity, or in his place of trust or profit." [Emphasis added.]

3. The district court's judgment is unreported. Arroyo was sentenced to eighteen months imprisonment on each count, with the sentences to run concurrently. Sanchez was sentenced to fifteen months imprisonment on the conspiracy count.

*Background*

In May of 1975, complaining witness Orlando Fernandez Galindo (Fernandez), a native of Cuba who came to this country in 1968, applied for a United States Small Business Administration (SBA) guaranteed loan. Fernandez went first to the Chicago Economic Development Corporation (CEDCO), funded in part by the federal Model Cities Program and functioning to assist small businessmen in obtaining SBA guaranteed loans through local banks. CEDCO prepared a loan package for Fernandez and submitted it to the First National Bank of Chicago, which then applied to SBA for a 90% guarantee. The loan was an economic opportunity loan—a special type for economically disadvantaged individuals.

On August 19, 1975, Arroyo—a loan officer with SBA [4]—received the Fernandez application, for review of its credit worthiness and presentation to his supervisor, who relied upon Arroyo's recommendations in determining whether an applicant should receive a guaranteed loan. The loan received SBA authorization on August 26, 1975, but Fernandez was not told of that until later.

On August 27, 1975, Fernandez went to see Sanchez, a business counselor at CEDCO, who told Fernandez the bank had approved the loan, but that there would be no money until SBA authorization was received. Sanchez said the only person who could help Fernandez was Arroyo, and arranged for Fernandez to dine with Arroyo the next day.

On August 28, 1975, Fernandez went to CEDCO to meet Arroyo. Sanchez told Fernandez to pick up Arroyo at his home, giving him the address. Fernandez picked up Arroyo and Arroyo's son, and the three dined at a restaurant. Arroyo and Fernandez discussed the loan application. When Fernandez asked about the delay, Arroyo repeated several times that Fernandez "did not have any problems" because "he [Arroyo] had it [the loan application]." When Fernandez asked if it would cost him any-

thing, Arroyo told him to see Sanchez the next day.

On August 29, 1975, Fernandez went to CEDCO and related to Sanchez the previous night's conversation. When Sanchez asked Fernandez the amount of the loan, Fernandez replied $35,000." When Fernandez asked how much it would cost, Sanchez said "some of the people had paid different amounts." Sanchez then mentioned to Fernandez "a different amount."

About two or three days later (i. e., on August 31 or September 1), the bank told Fernandez that the SBA had authorized only $5,000. Prior to Christmas, 1975, Fernandez met Sanchez at CEDCO, and Sanchez asked him if he had paid Arroyo $800. When Fernandez replied that he had not because of problems in getting the loan proceeds, Sanchez indicated that things would be "convenient or better" if Fernandez paid the $800.

SBA records indicated a January 8, 1976, disbursement of $20,000 and a February 10, 1976, disbursement of $10,000 to Fernandez.

On March 15, 1976, Fernandez returned from a trip to Puerto Rico and spoke with Sanchez, who told him Arroyo wanted to speak with him about "the money" and to collect "the eight." Immediately thereafter, Arroyo called Fernandez and said he was going to stop by the next day about 5:00 p. m., "to pick up the money." Fernandez reported the situation to the Federal Bureau of Investigation (FBI).

On March 16, 1976, FBI agents installed sound recording equipment at Fernandez' place of business, gave Fernandez $500 in marked bills, and waited for Arroyo. About five minutes before Arroyo arrived, Sanchez called Fernandez and said Arroyo was on his way. Arroyo arrived between 5:00 p. m. and 5:30 p. m. Before Fernandez gave Arroyo the $500, a conversation occurred:

"Fernandez: How much do I have to give you?

---

4. It is not disputed here that the SBA is a "department, agency or branch" of the United States Government, or that Arroyo was a "pub-

lic official" within the definition of that term in 18 U.S.C. § 201(a), or that Sanchez was a conspirator.

Arroyo: Well, whatever you told me.

Fernandez: How much was that?

Arroyo: 800."

Acknowledging that $800 was the agreed figure, Fernandez said he could pay only $500 because of business problems and this discussion ensued:

"Fernandez: I have had a million problems here. Well, you know how it is. It is so bad, that you are going to have, you're going to have to approve another loan of 35,000 pesos for me.

Arroyo: Sure.

\* \* \* \* \* \* \*

Fernandez: How much does people pay up to for around 35,000 pesos?

Arroyo: It depends on the case my brother, or how much difficulty one has. \* \* \* You must understand, there isn't, there is no fixed rate, besides, you were the one who set the rate.

Fernandez: Yes, no, listen, that \* \* \* it wasn't me! He set it, Frank [Sanchez] did. No, you must understand how it was.

Arroyo: I don't know. I know only what you told me.

Fernandez: Yes."

Fernandez thanked Arroyo for his work on the loan. Arroyo said that if Fernandez wanted additional money, he should see Sanchez and have him prepare another application, because there was an excess of funds at the end of the fiscal year.

Fernandez gave Arroyo the $500 and Arroyo put the money in his coat pocket. As Arroyo was leaving, Special Agent Gregorio Rodriguez of the FBI arrested him.[5]

SBA records indicated that Fernandez was unable to repay the loan and in May, 1977, the SBA purchased it from the bank.

### The District Court's Jury Instruction

The material portions of the jury charge are:

"As used in this section [§ 201(c)(1)], the term 'official act' means any decision or act or any question, matter, cause, suit, proceeding or controversy which may at any time be pending or which may, by law, be brought before any public official in his official capacity or in his place of trust or profit."

\* \* \* \* \* \* \*

"In order for the crime of bribery to be committed, it is not necessary that the public official actually have the power to perform the act that he promises in return for the money. What is necessary is that the public official solicit or receive the money on the representation that the money is for the purpose of influencing his performance of some official act."

\* \* \* \* \* \* \*

"[T]he government must prove beyond a reasonable doubt each of the following elements: One, that the defendant Anthony Arroyo was during the time charged in the indictment a public official as defined in the law; namely, a loan officer of the United States Small Business Administration.

"Two, that the defendant Anthony Arroyo did corruptly ask, demand, exact, solicit, seek, accept, receive and agree to receive money from Orlando Fernandez. And that three, that the defendant Anthony Arroyo represented or caused to be represented to Orlando Fernandez that this money was in return for Anthony Arroyo's being influenced in his performance of an official act as that term has previously been defined."

### The Defendants' Requested Jury Instruction

The district court refused this requested instruction, which paraphrases the language of the court in *Woelfel v. United States*, 237 F.2d 484, 488 (4th Cir. 1956):

"If you believe that the defendants' requests for or solicitations of the gratuity were not made until after the employee had exhausted his power of decision or action in connection with the loan and

---

**5.** Rodriguez testified that: "Mr. Arroyo stated to me that he knew what he was being arrested for and that what he had done was against the law."

were not made under any prior promise or understanding that a gratuity would be forthcoming, then the defendants' actions did not constitute a transgression and you must find them not guilty."

### Appellants' Contentions

Arroyo and Sanchez contend that it is not a violation of 18 U.S.C. § 201(c)(1), *supra* note 1, to solicit or accept money when the solicitation activity commenced after the public official had completely performed his official action. They quote from *Woelfel v. United States, supra* :

"However, the defendant was entitled to have the jury instructed on the legal effect of his contention for the evidence— that if they believed that the request for a gratuity was not made by the accused until after he had exhausted his power of decision or action on the question or matter before him, and was not made under any prior promise or understanding that a gratuity would be forthcoming, then his request did not constitute a transgression of the statute. This is a sound construction of the act and the District Judge should have so charged the jury. While such a solicitation would be contemptible, it would not be indictable, for it would not be possible for prior 'decision or action' of an employee to be affected by later, unanticipated gifts, however rewarding they might be." [237 F.2d at 488.]

Further, Arroyo and Sanchez assert that Arroyo may have solicited a gratuity, in violation of 18 U.S.C. § 201(g) (1976),[6] but not a bribe, in violation of § 201(c)(1), quoting from *United States v. Brewster,* 165 U.S.App.D.C. 1, 7, 506 F.2d 62, 68 (1974):

"3. The bribery section (c)(1) prohibits the receipt of anything of value 'in return for: (1) being influenced in his performance of any official act,' while the gratuity section (g) prohibits the receipt of anything of value 'for or because of any official act performed or to be performed by him.' * * * "

"4. The gratuity section (g), unlike the bribery section (c), applies to past official acts as well as future ones. * * * "

### Issue

Whether the district court erred, in denying the motions for acquittal and refusing the requested instruction, turns on the underlying question of whether § 201(c)(1) is applicable only to bribery solicitations occurring before actual performance of the official act intended to be influenced.

### OPINION

We hold that the district court did not err. Further, we hold that the jury instruction given by the district court accurately stated the law. Section 201(c)(1) cannot be limited in every case to bribery solicitations occurring before actual performance of the official act without destroying the intent of the statute.[7]

Arroyo and Sanchez' contentions, if accepted, would encourage the very conduct Congress condemned. Under the proffered interpretation, a public official could hurriedly and surreptitiously perform his official act, and then corruptly solicit and en-

---

6. 18 U.S.C. § 201(g) (1976) provides:

"(g) Whoever, being a public official, former public official, or person selected to be a public official, otherwise than as provided by law for the proper discharge of official duty, directly or indirectly asks, demands, exacts, solicits, seeks, accepts, receives, or agrees to receive anything of value for himself for or because of any official act performed or to be performed by him;

* * * * * * *

"Shall be fined not more than $10,000 or imprisoned for not more than two years, or both."

7. Section 201(c)(1) has been held "applicable to a situation where the advice and recommendation of the Government employee involved would be influential * * * even though the employee did not have the authority to make the final decision." *United States v. Heffler,* 402 F.2d 924, 926 (3d Cir. 1968), *cert. denied,* 394 U.S. 946, 89 S.Ct. 1280, 22 L.Ed.2d 480 (1969), quoting from *Krogmann v. United States,* 225 F.2d 220, 225 (6th Cir. 1955) (prosecution for offering a bribe).

courage the bribe, by creating the impression in the potential briber's mind that his official act had not yet been taken.[8]

That is what Arroyo did here. Dealing with a loan program for the economically disadvantaged, Arroyo approved Fernandez' credit worthiness without ever talking with him about the loan and within a few days of receiving the loan application. The loan was authorized on August 26, 1975. Yet on August 28, 1975, when Fernandez asked about the delay of the loan, Arroyo expressly and falsely represented that "he had it," creating the false impression that the application was still pending before him. Fernandez, an unsophisticated immigrant to our shores, and seeking to enter the economic mainstream as a small business entrepreneur, could have gained no other impression. Indeed, the most sophisticated native-born could have gained no other. Then, when Fernandez asked if it would "cost" him, Arroyo did not say, "No, of course not. You are dealing with the United States Government and we don't do things that way," or words to that effect. Arroyo said, "See Sanchez." The return-for-being-influenced element of the offense was correctly stated by the district court in its jury charge: "that the defendant Anthony Arroyo represented or caused to be represented to Orlando Fernandez that this money was in return for Anthony Arroyo's being influenced in his performance of an official act, as that term has previously been defined."

The operative language of § 201(c)(1) is "[w]hoever, being a public official * * * corruptly * * * solicits * * * anything of value for himself * * * in return for * * * being influenced in his performance of any official act." "Official act" is defined in § 201(a), *supra* note 2, as "any * * * action * * * which may *at any time* be pending * * * before any public official, in his official capacity * * *." (Emphasis added.) Congress having used broad language in these provisions, we find no intent to limit their coverage to future acts.[9] Congress did not intend for a public official, who had solicited and encouraged a bribe with a false representation that the official act was *in futuro,* to escape liability for bribe-solicitation by proving that he had successfully hidden the truth of past performance from the bribe-payer.

Arroyo and Sanchez seize upon the words "being influenced" as indicating that § 201(c)(1) requires that the bribe be paid to influence a future act, arguing that one cannot be influenced to do what has already been done. The argument is without merit in this case, for it disregards the lead-in phrase "in return for." That phrase brings into play the purpose of the bribe and thus the mind of the bribe-payer. Though more careful draftsmanship might have added "or apparently being" after "being," the section prohibits solicitation of payment "in return for being influenced." As illustrated by § 201(c), the gravamen of the offense lies in the corrupt solicitation, which would fail if the solicitee were told the truth.[10]

---

**8.** The solicitation here began within about 24 hours (Sanchez) or 48 hours (Arroyo) after the undisclosed performance of Arroyo's official act. As discussed in the text, the test is not whether the official act was actually performed one day or one minute before or after the solicitation, but whether the solicitation was corrupt.

**9.** The dissenting opinion correctly states that criminal statutes must be strictly interpreted. To hold, however, that 201(c)(1) is applicable when the bribe solicitor has hidden the fact that official action is no longer pending does not expand that section beyond its literal meaning. Reading, as we must, the § 201(a) definition of "official act" into § 201(c)(1), as indicated in the text, makes § 201(c)(1) applicable

to every public official who corruptly solicits anything of value in return for being influenced in his performance of any action which may *at any time* be pending. The mere presence of the word "performed" in § 201(g) cannot be viewed as so limiting § 201(c)(1) as to immunize from prosecution thereunder the corrupt solicitation of payment for what everyone but the solicitor believes to be a bribe.

**10.** The dissenting opinion states that "a bribery statute is designed to prevent official decisions made as the result of corrupt influence." We view the statute as designed to prevent corrupt solicitation by government officials. The distinction between § 201(c)(1) and § 201(g) lies in *what* is solicited, the former prohibiting solici-

Bribes are paid, and solicited, in exchange for what the payer believes he is paying for. The bribe solicitor will always create the impression that the action sought is yet to come and is contingent on the bribe. The solicitation, against which the section is directed, is the same, whether the yet-to-come impression be objectively true or false. Further, § 201(c)(1), in listing one of the "in return for" elements, speaks of "*being* influenced *in* his performance of any official act" (emphasis added). It does not speak of "being influenced· *to* perform any official act." [11]

The broad language of the statute, and the purpose it was designed to accomplish,[12] preclude the narrow construction sought by Arroyo and Sanchez.[13]

Arroyo and Sanchez' reliance on *Woelfel v. United States, supra,* is misplaced.[14] Unlike Fernandez here, the person solicited by Woelfel knew of the performance of the official act (a change order·in a government contract) at the time of Woelfel's initial. solicitation.

Unlike the situation before us, there was no false representation by the government official in *Woelfel* that he "had" the matter

---

tation of bribes, the latter prohibiting solicitation of gratuities. Whether the solicitation succeed or fail, and whether the official act had been secretly performed, cannot change what was solicited. The dissenting opinion appears to recognize that whether the official act could be influenced is irrelevant in prosecution of a bribe payer under § 201(b), i. e., that Fernandez (had he not reported to the FBI) could have been prosecuted for paying the bribe sought here, but then suggests that Arroyo could not be prosecuted under § 201(c)(1) for soliciting the same bribe. The view that § 201(c)(1) merely seeks to shield *decisions resulting* from influence, would appear to create an absolute defense for an official, who solicits a bribe before he acts, but who can prove his decision was not influenced because he would have made the same decision in any event, for the official whose bribe solicitation was refused and whose decision favorable to the solicitee could not then have been influenced, and for the soliciting official who (unknown to the briber) has no authority whatever to decide, and does not in fact decide, anything in the premises.

11. If the focus be on the sole fact that the official act has already been performed, it is impossible on that ground alone to distinguish § 201(c)(1) from § 201(g), which encompasses solicitation "for or because of any official act * * * to be performed." Distinctions between § 201(c) and § 201(g) appear in the differing language employed by the Congress. The latter section includes "otherwise than as provided by law for the proper discharge of official duty" and "for or because of any official act performed or to be performed by him." The former includes "for himself or for any other person or entity" and, of primary importance, the word "corruptly" (see discussion re *Brewster* in text, *infra* ).

12. In *United States v. Troop,* 235 F.2d 123 (7th Cir. 1956), involving the parallel provision which prohibits *offering* bribes (now § 201(b)),

this court quoted with approval from *Kemler v. United States,* 133 F.2d 235, 238 (1st Cir. 1942):

"The clear purpose of the statute is to protect the public from the evil consequences of corruption in the public service. Thus the gravamen of the offense described therein is the giving or offering of a bribe to a person acting on behalf of the United States for the purpose of influencing official conduct. Obviously no one would give or offer a bribe unless he expected to gain some advantage thereby, and since attempting to gain an advantage by this means is the evil which the statute is designed to prevent, it can make no difference if after the act is done the doer discovers that for some reason or another, be it a mistake on his part or mistake on the part of some officer or agency of the United States, there was actually no occasion for him to have done it." [235 F.2d at 125.]

The "consequences of corruption in the public service" are equally evil where, as here, the public *official* solicits the bribe and the bribe solicitee believes the public official is being influenced.

13. Arroyo and Sanchez cite no legislative history supporting a narrow construction and we have found none. On the contrary, when the present statute was enacted in 1962 (Act of October 23, 1962, Pub.L. No. 87–849, 76 Stat. 1119), the section-by-section analysis in the Senate Report stated: "The term 'official act' is defined to include *any* decision or action *taken* by a public official in his capacity as such." (Emphasis added.) S.Rep. No. 2213, 87th Cong., 2d Sess. (1962), *reprinted in* (1962) U.S. Code Cong. & Admin.News, pp. 3852, 3856. Thus, we perceive no intent by Congress to exclude past acts from the definition of "official act."

14. *Woelfel* involved 18 U.S.C. § 202 (1952). When the present section, § 201(c)(1), was enacted in 1962, the word "corruptly" was inserted. See *United States v. Isa,* 452 F.2d 723, 725 (7th Cir. 1971).

still in his control, and no belief on the part of the potential bribe-payer that he was being solicited in return for Woelfel's being influenced to do a future act. Hence *Woelfel* is distinguishable on its facts. Further, the distinction highlights the misrepresentation element. The bribe-solicitee in *Woelfel,* Potter, gave Woelfel "no answer." Nor is that reaction surprising. Potter knew that the official act had been performed, and that anything he gave "later on" would necessarily be a gratuity. The solicitation in *Woelfel* was clearly for a gratuity, which Potter could safely ignore. The solicitation in the case before us was clearly for a bribe, i. e., "for being influenced in his performance," which Fernandez was led to believe he could ignore only at peril to his loan. When the official act has actually been performed at the time of the solicitation, the distinction between the facts of this case and those of *Woelfel,* and the distinction between § 201(c)(1) and § 201(g) as well, lies in the nature of the solicitation. Here it was corrupt as the jury found. In *Woelfel,* it was not. The difference lies in the understanding of Fernandez, created by Sanchez and Arroyo, that the act was yet to be performed, and the understanding of Potter created by Woelfel, that the act had been performed. The opinion states:

> "The prosecution's case begins in December, 1954, with a proposal initiated by the officer in charge to amend the prime contract so as to substitute wood block flooring for the resilient floor covering originally specified. He directed Woelfel to ascertain the cost of a wood replacement and in this way Woelfel met the representatives, including one Potter, of a wood flooring company of Georgia. On January 3, 1955 Potter brought samples of his employer's product to Charlotte and discussed them with Woelfel. Satisfied that the wood blocks should make a more serviceable flooring and mean a substantial monetary saving, the officer in charge ordered the defendant to write the Corps of Engineers recommending the change. This Woelfel did on January 5 and promptly the change was accepted by the Engineer Corps. A chronicle of

the defendant's subsequent behavior gives in narrow focus the Government's case.

> "January 7—*Woelfel by telephone informed Potter, at his residence in Atlanta, that apparently the specification would be changed to wood block flooring,* and when Potter commented, 'That's fine,' Woelfel said, 'Yes, but I want something more than "that's fine" later on. Do you know what I mean?' Potter gave him no answer." [237 F.2d at 485–86, emphasis added.]

Arroyo and Sanchez' reliance on *United States v. Brewster, supra,* is equally misplaced. First, the portion of the opinion they quoted (and quoted above) is part of defendant Brewster's *argument* to the appellate court. Second, the court did not say in its opinion that it "accepted and agreed with this distinction" as Arroyo and Sanchez maintain. Third, and most significant, *Brewster* did not involve a misrepresentation that a past official act was *in futuro.* Arroyo and Sanchez' attempt to take the quoted portion of the *Brewster* opinion out of context, and to apply it to a different set of facts, must fail.

The opinion in *Brewster* did, however, set forth the many distinctions between § 201(c)(1) and § 201(g), pointing out that the primary distinction lies in the requisite degree of criminal intent (165 U.S.App.D.C. at 10, 506 F.2d at 71):

> "The requisite intent to constitute accepting a bribe is to accept a thing of value 'corruptly' under section (c)(1); the comparable intent under the gratuity section (g) is to accept a thing of value 'otherwise than as provided by law for the proper discharge of official duty.' On the face of the statute the two comparative clauses are not equivalents. Congress did not use the same language in defining criminal intent for the two offenses. 'Corruptly' bespeaks a higher degree of criminal knowledge and purpose than does 'otherwise than as provided by law for the proper discharge of official duty.' It appears entirely possible that a public official could accept a thing of

value 'otherwise than as provided by law for the proper discharge of official duty,' and at the same time not do it 'corruptly.' Congress obviously wished to prohibit public officials accepting things of value with either degree of criminal intent; it did so, but it legislated a difference in the requisite criminal intent and correspondingly in the penalties attached." [15]

The jury found, and its finding is not contested before us, that the bribe solicitation was here made with the requisite corrupt intent.

Section 201(c)(1), not § 201(g), is applicable to the facts of this case. Accordingly, the judgment of the district court is *affirmed.* It is so ordered.

AFFIRMED.

SWYGERT, Circuit Judge, dissenting.

As blameworthy as the conduct of the defendants may be, in my opinion it simply does not constitute the commission of an offense as defined by section 201(c)(1). I would therefore reverse.

On August 26, 1975 defendant Arroyo, a loan officer with the Small Business Administration, recommended approval of Fernandez' application for an SBA approved loan. Arroyo's supervisor concurred in that recommendation on the same day. The loan application was then processed through usual channels and the money eventually paid to Fernandez.

On August 27 Arroyo's codefendant, Sanchez, talked to Fernandez and arranged for him to see Arroyo. Fernandez first met Arroyo on August 28, two days after Arroyo had recommended approval of the loan. Thus, Arroyo's authority to take official action with regard to the loan application had been exercised and terminated before any attempt was made by either Sanchez or Arroyo to solicit a bribe.

Two sections of the statute which deal with bribery, sections 201(b) and (c), are parallel provisions which prohibit the request for and giving of bribes. Two other sections, (f) and (g), also parallel provisions, cover the giving and receipt of gratuities. It is most important to distinguish properly between the bribery and gratuity sections, a distinction made in the statute but not in the majority's opinion. Although both types of activity are prohibited under the statute, bribery is clearly considered to be the more serious offense as evidenced by the difference in penalties.[1]

The bribery sections punish those who would substitute the wishes of an interested party for the "objective evaluation and unbiased judgment on the part of those who participate in the making of official decisions." *United States v. Labovitz,* 251 F.2d 393, 394 (3d Cir. 1958). The purpose of these sections is therefore to prevent corruption of the decision-making process.

Section 201(b) may be violated even though the official was not corrupted by the offer, or the purpose of the bribe was unattainable,[2] or even though there was actually no occasion to seek to influence an official's conduct.[3] In each case, however, the defendant must intend to influence the bribee. *Kemler v. United States,* 133 F.2d 235 (1st Cir. 1942). Similarly, a public official charged with violating section 201(c) must intend to corruptly solicit something of value *in return for* being influenced, that is, intend to permit himself to be influ-

---

15. The disparity in penalties appears in the quotes at footnotes 1 and 6, *supra.* In addition to greater maximum periods of incarceration and fines, government officials convicted of violating section 201(c)(1) may be disqualified from further government employment.

1. One convicted under section 201(b) or (c), the bribery sections, "[s]hall be fined not more than $20,000 or three times the monetary equivalent of the thing of value, whichever is greater, or imprisoned for not more than fifteen years, or both, and may be disqualified from holding any office of honor, trust, or profit under the United States."

One convicted under section 201(f) or (g), on the other hand, "[s]hall be fined not more than $10,000 or imprisoned for not more than two years, or both."

2. *See, e. g., United States v. Troop,* 235 F.2d 123 (7th Cir. 1956).

3. *See, e. g., United States v. Labovitz,* 251 F.2d 393 (3d Cir. 1958).

enced. *United States v. Irwin,* 354 F.2d 192, 195–96 (2d Cir. 1965), *cert. denied,* 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308 (1966).

In the case at bar, Arroyo's part in the decision-making process had already been completed at the time it was represented that a bribe might bring about a favorable decision. No evidence was introduced to show that Arroyo could in any way have altered or influenced the decision that had already been made. The matter was completely out of his hands. It therefore follows that he did not have the requisite intent necessary for a conviction under section 201(c).

In *Woelfel v. United States,* 237 F.2d 484, 488 (4th Cir. 1956), the Fourth Circuit held that where a federal government employee's requests for a payment "was not made . . . until after [the employee] had exhausted his power of decision or action on the question or matter before him, and was not made under any prior promise or understanding that a gratuity would be forthcoming," the request did not constitute a violation of the bribery statute. I would follow the Fourth Circuit's holding in the present case.

Both Arroyo and Sanchez misrepresented, implicitly if not explicitly, that the decision on the loan application was still pending, but that misrepresentation was made to Fernandez *after* the application was approved. I emphasize again that a bribery statute is designed to prevent official decisions made as a result of corrupt influence. Accordingly, when a public official represents to a prospective briber that a decision is still pending when in fact it has already been made, the misrepresentation takes on the character of fraudulent conduct, but it does not constitute solicitation of a bribe as defined by section 201(c)(1). The language of that section is plain and unambiguous. Its literal meaning ought not be expanded by interpretation as the majority has done, for it is a cardinal rule of statutory construction that a criminal statute must be strictly construed. *United States v. Wiltberger,* 18 U.S. (5 Wheat.) 76, 95–96, 5 L.Ed. 37 (1820).

Despite appearances, the defendants' conduct was actually solicitation and acceptance of a gratuity for an "official act performed," a transgression of 18 U.S.C. § 201(g). *See United States v. Brewster,* 165 U.S.App.D.C. 1, 506 F.2d 62 (1974). Such conduct does not constitute a violation of section 201(c)(1).